Elizabeth DOLE, Secretary of Labor,
United States Department of
Labor, Plaintiff,

v.

MALCOLM PIRNIE, INC., Defendant.

No. 89 Civ. 3554 (GLG).

United States District Court,
S.D. New York.

March 4, 1991.

**900**

Office of the Sol. U.S. Dept. of Labor, New York City (Percy S. Miller, of counsel), for plaintiff.

Epstein Becker & Green, P.C., New York City by Gilbert J. Ginsburg, and Robert L. Jauvtis (Bickel & Brewer, New York City of counsel), for defendant.

## OPINION

GOETTEL, District Judge:

The narrow issue presented by these cross-motions for partial summary judgment is whether professional and managerial employees were exempt from the overtime requirements of the Fair Labor Standards Act ("FLSA") because the salary test set forth in 29 C.F.R. § 541.118 was satisfied, notwithstanding the fact that deductions for absences of less than a day were made from the paychecks of some of these employees.[1]

## BACKGROUND

Defendant Malcolm Pirnie, Inc. ("MP") is a consulting professional engineering firm with a major specialty in the area of water and waste water treatment for municipalities and industrial companies. Its roughly 900 employees are classified into eleven salary grades of which Levels 1 to 5 are considered non-exempt and Levels 6 to 11

are considered exempt. The jobs represented by grades 6 through 9 include positions such as engineers, accountants, architects, scientists, supervisors and administrators. Senior managers and officers of the corporation are grades 10 and 11. The exempt employees are well-compensated, earning salaries from over $30,000 per year to over $70,000 per year. When hired, each exempt employee is told what his or her monthly salary will be. Employees are paid twice a month. All MP employees are required to work forty hours per week and eight hours per day.

The FLSA requires that all employees working longer than forty hours per week be paid overtime at a rate of one and one-half times their regular hourly rate unless an exemption is applicable. MP considered its employees in grades 6 through 9 exempt from these overtime provisions. Nevertheless, the firm's policy was to pay overtime to employees in grades 6 through 9 in order to compensate them for the many hours they often worked beyond the required hours. Thus, an exempt employee working in excess of eight hours in a day or of forty hours in one week would receive overtime compensation. Though these employees were paid a monthly salary, in order to arrive at a rate at which to pay overtime, an hourly rate was calculated for each employee by dividing his or her total monthly compensation in half and then by 80. Grades 6 to 8 were paid overtime at an hourly rate of time and a quarter; Grade 9 received straight time pay. These practices were apparently typical of the industry.

During the period of May 1, 1987 to December 8, 1988, employees kept their own time sheets on which they charged their time to client projects (which would later be billed) or to various overhead accounts. Among these accounts were accrual accounts such as vacation and personal illness, holidays, and absence without pay. Absences of a day or more could be charged by the exempt employees to their accrued sick or vacation time, or to absence

---

1. Left for determination in the future is the issue of whether 43 Malcolm Pirnie employees, considered exempt by the company, were indeed entitled to that status because the nature of their jobs satisfied the "duties test" in the regulations. *See* 29 C.F.R. §§ 541.1, 541.2, 541.3.

without pay. Absences of less than a day, resulting for instance from tardiness or car trouble, would also be charged to the overhead accounts. The corporate policy guide stated that:

> [i]f a staff member loses time because of inclement weather, car problems, or medical reasons, s/he may arrange with his/her Group Manager to make up the time, or to charge it to vacation or optional holidays; otherwise it will be treated as absence without pay. Whatever the arrangement, it should be recorded properly on the time sheet.

Malcolm Pirnie Policy Guide, at 6–23. This language was echoed in the Malcolm Pirnie Handbook of Information for the Staff.[2]

During the period of May 1, 1987 to December 8, 1988, 24 employees in grades 6 through 9 had their compensation reduced after recording an absence of less than a day in the "absence without pay" column on their time sheet. The total amount of the payroll deductions was $3269.78. This money was later reimbursed to the affected employees.

On December 8, 1988, MP amended its policy concerning absences of less than a day and specifically instructed its employees in grades 6 through 11 to charge absences of less than a day to a new overhead account called "Paid Absence" and not to their individual leave accounts.

In May 1989, the Department of Labor commenced this suit alleging that employees in MP's pay grades 6 through 9 during the period of May 1, 1987 through December 8, 1988 were not exempt from the overtime provisions of the FLSA and were therefore entitled to payment of overtime wages at the rate of time and one half their regular rate of pay. At stake is a sum of roughly $500,000 which is the difference between the actual overtime compensated at the MP rates and that time calculated at the statutory time and one half.

## DISCUSSION

### A. *Summary Judgment*

Federal Rule of Civil Procedure 56(c) provides that the trial judge shall grant summary judgment if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law. The threshold inquiry is whether there are genuine factual issues that must be resolved by a finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). On occasion, a case will be presented in which there is no dispute about the material facts but only as to their significance. Summary judgment is appropriate in such situations, *Transamerica Delaval Inc. v. Citibank, N.A.*, 545 F.Supp. 200 (S.D.N.Y.1982), so long as all inferences are drawn against the moving party, *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam), and reasonable minds could not differ as to the import of the evidence before the court, *Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 (2d Cir.1990).

The material facts here are not in dispute. The parties agree that 24 MP employees in salary grades 6 through 9 were subjected to reductions in compensation as a result of their having recorded their time in the "absence without pay" account on their time sheets. The parties also agree that these parties were reimbursed for the deductions and that MP has promised to comply with Department of Labor regulations in the future. Additionally, there is no question that both the MP Policy Guide and Handbook instructed *all* employees losing time because of inclement weather, car problems, or medical reasons to make up the time or charge it to accrued time or an "absence without pay" account. What the parties dispute is whether the statements made in this corporate literature and the fact that such reductions were actually

---

**2.** It is unclear how employees were made aware of this corporate policy. The Policy Guide was distributed to the managers and officers of the company. Language in the introduction to the Handbook suggests that it was intended to be distributed to all new employees as an orientation and was intended to be a source of information for common questions.

made in the compensation of 24 employees signified that the compensation of all employees was subject to reduction thereby destroying the exempt status of all MP employees in grades 6 through 9 during the period in question.

MP makes two arguments in support of its position that the employees in grades 6 through 9 were exempt from the FLSA overtime provisions. First, MP contends that these employees were salaried because their compensation was predetermined and not related to the number of hours actually worked. Second, MP argues that even if the payroll practices applied to these employees was not structured to satisfy the salary basis test of 29 C.F.R. § 541.118(a), by changing this policy, reimbursing the employees and promising to comply, the exempt status of these employees was preserved by a "window of correction" set forth in 29 C.F.R. § 541.118(a)(6). In its motion for partial summary judgment, the Department of Labor responds that the compensation of these employees was directly linked to the number of hours worked and that these employees were never exempt, therefore, from the provisions of the FLSA. The net result, the Department contends, is that the "window of correction" is not available at all to MP. These arguments will be considered below.

### B. *Salaried or Hourly?*

The first question posed by the parties is whether the MP employees in grades 6 to 9 were salaried or hourly employees. After carefully considering the matter, we believe that this question need not be answered in order to successfully resolve the dispute between the Department of Labor and Malcolm Pirnie, Inc. However, the underlying jurisprudence, in addition to the applicable facts, provide the context in which the availability of the "window of correc-

tion" to MP must be addressed. Therefore, we will briefly sketch the relevant considerations.

 Under 29 U.S.C. § 207(a) of the Fair Labor Standards Act, any employees working over forty hours per week must receive compensation for this extra time at a rate not less than one and one-half times the regular rate at which they are employed. A statutory exemption to this rule is provided for employees employed in a "bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1).[3]

The scope of the § 213(a)(1) exemptions is defined in Department of Labor regulations found at 29 C.F.R. § 541.1, 29 C.F.R. § 541.2, and 29 C.F.R. § 541.3. The regulations demand that a person for whom the managerial exemption is claimed must be compensated on a "salary basis," 29 C.F.R. § 541.1(f), and that persons for whom the administrative or professional exemptions are claimed must be compensated on a "salary or fee basis," 29 C.F.R. § 541.2(e)(1); 29 C.F.R. § 541.3(e). An employer is not required by the FLSA to pay overtime to any employee whose terms of employment satisfy the salary basis test of the regulations.[4] The Department of Labor maintains that the compensation plan and payroll practices applied to the MP employees in grades 6 to 9 do not satisfy this test of these regulations, as it is interpreted by 29 C.F.R. 541.118, resulting in the exemption being inapplicable to these employees.

 It is well established that under the Department of Labor regulations, if an employee is considered salaried, his or her compensation may not be subjected to reduction for absences of less than a day. A salaried employee is compensated not for the amount of time spent on the job, but rather for the general value of services

---

**3.** Exemptions to the FLSA are narrowly construed in order to further Congress' remedial goal of providing employment protection. *Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960). The employer is burdened with the duty of proving affirmatively that its employees come within these exemptions, *Corning Glass Works v. Brennan,* 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2229,

41 L.Ed.2d 1 (1974), by "clear and affirmative evidence," *see Donovan v. United Video, Inc.,* 725 F.2d 577, 581 (10th Cir.1984).

**4.** The regulations also require that the duties of the exempt employees meet certain criteria. With respect to the MP employees, the parties agree that the duties test has been satisfied.

performed.[5] Thus, the key to our inquiry is whether the compensation plan, as structured, subjects the salary of the managerial, professional or administrative employee to reduction. "Either pay is fixed and immutable, and not subject to such deductions, or it is contingent." *Abshire v. County of Kern,* 908 F.2d 483, 487 (9th Cir.1990) (rejecting defendant's argument that employees are salaried because no deductions were actually made), *cert. denied,* — U.S. —, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991). Fixed pay is a "salary;" pay which varies according to the quantity or quality of work results in hourly status.[6] It is the potential for reduction that destroys exempt status.

Here, MP has acknowledged that some barred reductions did occur, albeit in a comparatively small number of cases. Moreover, MP concedes that its method of accounting for employee time prior to December 8, 1988 created the potential for these reductions. For example, MP admitted at oral argument that under its former practice, if an employee in grades 6 through 9 missed two hours of work, chose not to make up that time, and recorded it on the time sheet as "absent without pay," that employee would be docked two hours of pay. Furthermore, as MP also acknowledged, if that same employee missed two hours of work, then worked two hours to make up that time, the employee would not be paid overtime. Indeed, pointing to these practices, the Department of Labor contends that because some MP employees in grades 6 through 9 were docked pay pursuant to a stated corporate policy which theoretically subjected the compensation of all employees in these salary grades to reduction, none of the employees in those grades can be considered salaried and that they are all therefore eligible for statutory overtime. MP has maintained that these deductions were irrelevant[7] and that, therefore, the exempt status of the employees in grades 6 through 9 was not jeopardized.

As stated earlier, resolution of this interesting question is not essential to disposition of these summary judgment motions. We will note, in passing that we have our doubts as to whether this scheme of com-

---

**5.** We have not been asked to decide whether paying overtime to salaried employees, thus increasing their compensation in relation to the hours worked, would affect their exempt status. *See Brock v. Claridge Hotel and Casino,* 846 F.2d 180 (3d Cir.), *cert. denied,* 488 U.S. 925, 109 S.Ct. 307, 102 L.Ed.2d 326 (1988). We acknowledge that payment of overtime *qua* overtime to an employee is an indicator of hourly status, *see id.,* but since traditionally many salaried employees receive bonuses which reward them for extra time put into a job, we see little reason why the payment of overtime would negate the exempt status of an employee.

**6.** MP argues that the employees in grades 6 through 9 received a predetermined salary as required by the regulations because they were told, when hired, what their annual salaries would be. However, a sum fixed in advance would not satisfy the concept of "salary" as used by the regulation because the regulation's plain language treats "salary" as a single, non-varying amount. If an MP employee in grades 6 through 9 missed less than a day of work without making up the time or charging it to an accrual account, if the company procedures listed in the corporate literature were followed to the letter, this employee's salary would be reduced. Thus, it was very possible for the employee's salary to vary across pay periods as a function of the actual hours worked and the

compensation cannot be considered predetermined.

**7.** MP argues that these deductions were made rarely and the compensation affected was de minimus. A number of courts have rejected this argument, holding that employees whose pay is "subject to reduction" for such absences are not salaried, even if no deductions have actually been made. *See, e.g., Banks v. City of North Little Rock,* 708 F.Supp. 1023, 1025 (E.D. Ark.1988) (no showing of actual deductions is needed); *Hawks v. City of Newport News, Va.,* 707 F.Supp. 212, 215 (E.D.Va.1988); *Persons v. City of Gresham, Or.,* 704 F.Supp. 191, 194 (D.Or.1988). *But see District of Columbia Nurses' Assoc. v. District of Columbia,* (reported at 1988 WL 156191) (D.D.C. Jan. 28, 1988) (holding that the occasional deduction made when the employee had exhausted his leave did not preclude exempt status).

In addition, MP maintains that, in reality, the compensation plan functioned differently from both how it was described in the company literature and how it was perceived by those employees who had made entries subjecting their pay to reduction and indeed, it never intended the directives in the employee literature to apply to employees in grades 6 through 9. These arguments are more applicable to the issue of whether MP may avail itself of the remedial provisions of the "window of correction."

pensation comports with the requirements of § 541.118(a). However, at this point, this court declines to characterize the status of the MP employees in grades 6 to 9 and assumes for the purposes of the next issue raised by the parties that the employees are not salaried.

## C. *The Window of Correction*

■ The critical issue raised by these motions is whether the MP employees in grades 6 through 9 may retain their exempt status because MP has complied with a "window of correction" afforded by 29 C.F.R. § 541.118(a)(6) ("subsection (6)"). This regulation states:

> The effect of making a deduction which is not permitted under these interpretations will depend upon the facts in the particular case. Where deductions are generally made when there is no work available, it indicates that there was no intention to pay the employee on a salary basis. In such a case the exemption would not be applicable to him during the entire period when such deductions were being made. On the other hand, where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.

The effect of this "window of correction" is to retroactively restore exempt status to employees who, *inter alia*, had their pay subjected to reduction for absences of less than a day.

Whether or not the "window of correction" is available to an employer who had been making unauthorized reductions in the pay of salaried employees is a matter of first impression in this circuit. We have assumed for the purpose of this argument that the MP employees were not salaried within the meaning of the regulations. The Department of Labor argues that the "window of correction" is only available to

a company who can show from the outset that its employees were entitled to exempt status. *See Dole v. Walker and Armstrong*, slip. op., at 5, No. CIV–88–1371–PHX–RCB (D.Arizona Apr. 26, 1990) (defendant was not entitled to use the "window of correction" because its deductions could "not be characterized as one-time or inadvertent deductions but rather reflect[ed] a settled policy of subjecting the pay of its employees to improper deductions"). The Department of Labor asserts that if this court had found that the MP employees were not "salaried employees" within the meaning of § 541.118(a), subsection (6) is simply not available to the offending company as a panacea.[8]

■ We believe the rule urged by DOL is too rigid. Subsection (6), by requiring examination of the facts of a particular case, suggests a more fluid approach. For example, under this subsection, it is appropriate to consider such factors as the employer's intention in making the reduction to the employee's salary. Furthermore, by allowing remediation, subsection (6) creates an incentive for the employer to comply with the regulations. Under the rule suggested by the Department of Labor, any employer whose payroll practices would technically bar exempt status for its employees would never be able to take advantage of the "window of correction". Therefore, no employer would comply with the provisions of § 541.118 until it was forced to do so. Because the FLSA is a remedial statute, intended to benefit employees, its exemptions are to be narrowly construed while its remedial provisions must be construed liberally so that the words will accomplish the purpose at which the act is aimed. The Department of Labor's view of when the "window of correction" may be applied defeats the underlying purpose of subsection (6). We hold that a finding that employees are not salaried within the meaning of § 541.118 does not necessarily preclude use of the "window of correction."

---

**8.** Here, we have made no such finding, assuming instead for the purposes of this analysis, that the finding was made.

Having concluded that the "window of correction" is available to MP, irregardless of how the underlying issue would be resolved, we turn to examine its actual application. MP reimbursed its employees who had suffered a loss of pay and informed its personnel of a revised leave policy for employees in grades 6 through 9.[9] In an affidavit signed June 27, 1990, MP's Vice President of Finance, Administration and Human Resources promised to comply in the future with the requirements of 29 C.F.R. § 541.118(a)(6).[10] MP argues that it availed itself of the "window of correction" by undertaking these remedial steps, as required by the regulation, and directs our attention to cases where the very steps taken by MP were considered proper utilization of the "window." For example, in *International Association of Fire Fighters, Alexandria Local 2141 v. City of Alexandria, Va.*, 720 F.Supp. 1230 (E.D.Va.1989), *aff'd*, 912 F.2d 463 (4th Cir. 1990), the city had a policy of docking captains and lieutenants employed by the fire department for absences of less than one day. The policy was changed to conform with federal regulation and 26 employees who had experienced unauthorized reductions were reimbursed. The court found that by revising its policy, the City demonstrated its compliance with the regulation and its intent to comply in the future. This, along with reimbursing affected employees, was deemed proper utilization of the "window of correction"; the court held, therefore, that the City had satisfied the salary test of 29 C.F.R. § 541.118(a). *See also Hartman v. Arlington County, Va.*, 720 F.Supp. 1227 (E.D.Va.1989) (current compliance satisfies "salary test" of 29 C.F.R. § 541.118(a)), *aff'd*, 903 F.2d 290 (4th Cir.1990); *Harkins v. City of Chesapeake*, slip. op., No. 88–25–N (E.D.Va. Dec. 2, 1988).

We decline to follow the analysis pursued in the cases cited by MP because those courts only focused on the defendants' current compliance, assuming that the questioned deductions were inadvertent even when an established policy of making such deductions existed. *See, e.g., Fire Fighters Local 2141*, 720 F.Supp. at 1232. Subsection (6) establishes conditions which must be satisfied even before the current compliance and reimbursement necessary to preserve the exempt status of the disputed employees are considered. "[W]here a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deduction and promises to comply in the future." 29 C.F.R. § 541.118(a)(6). Thus, before the employer's remedial actions may be assessed, it must be clear that the improper deductions were made only for the reasons set forth in the regulation. The reasons for the improper deductions were never addressed by the cases upon which MP relies. We will not, in contrast, allow use of the "window of correction" unless the regulation is fully satisfied.

MP argues that the "window of correction" is available because the deductions were made for reasons other than lack of work. Accepting MP's unchallenged representation that the firm was very busy and in fact growing, the argument is that the deductions were the result of an employee not working as opposed to work not being available for the employee to perform. The question is whether the phrase "made for reasons other than lack of work" encompasses the scenario MP proposes.

We must defer to an administrator's interpretation of its own regulations. *Udall v. Tallman*, 380 U.S. 1, 17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965). The problem here is that no interpretation of the phrase "reasons other than lack of work" has been made by the Administrator. Without the

---

9. Under the revised policy, employees in grades 6 through 11 will charge sick days, vacation time and optional holidays in full-day increments. Absences of less than a full day are to be charged to a new account "Paid Absence".

10. A promise to comply with the provisions of subsection (6) is somewhat meaningless. We believe, as evidenced by the restated MP policy, that the correct promise is to comply with all of the provisions of § 541.118. MP should submit, therefore, a revised affirmation.

guidance of an administrative interpretation, we must then turn to standard statutory construction. In determining the scope of a regulation, we look first to its language, *see United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981), giving the "words used" their "ordinary meaning," *Richards v. United States*, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962).

The paramount concern of subsection (6) is that a salaried employee's compensation not be reduced if work is not available for him or her to perform. Indeed, this notion appears twice within the one paragraph of this regulation. While the regulation makes it clear that an employer may not use the "window of correction" when the salaried employee's compensation has been reduced because there is no work available, there is no suggestion that reductions for other reasons would be a bar to using the "window of correction."

The language of subsection (6) contains no ambiguity and we must conclude that "lack of work" means precisely that. No argument has been made by the Department of Labor that the MP reductions were made as a result of no work being available. Instead, the plaintiff's entire argument centers on the structure of the compensation plan. Because there has been no contention that the deductions in question were made as a result of work lacking for the employee, we must hold that one of the available criteria precedent to use of the "window of correction" by MP has been satisfied.

The regulation poses the conditions in the alternative. Its words indicate that so long as the improper deductions were made for "reasons other than lack of work" *or* inadvertently, the "window of correction" may be used by an employer who has reimbursed the affected employees and promised to comply with the regulations in the future. Under a plain reading of the regulation, we could therefore conclude that because 1) MP made the improper deductions for reasons other than lack of work and 2) it has reimbursed the affected employees and promised to comply with the

regulation in the future, MP may use the "window of correction" to preserve the exempt status of the disputed employees in grades 6 though 9.

■ However, we have grave doubts that the Department of Labor intended the regulation to be read alternatively with respect to the reasons underlying the barred deduction. We believe that a better reading of the regulation would take these conditions conjunctively, requiring that the improper deductions have been made both for "reasons other than lack of work" and "inadvertently." *See McNally v. United States*, 483 U.S. 350, 358–60, 107 S.Ct. 2875, 2880–82, 97 L.Ed.2d 292 (1987) (reading disjunctive prohibitions of 18 U.S.C. § 1341 in conjunction); *United States v. Schwartz*, 924 F.2d 410, 416 (2nd Cir.1991). This application is necessary so that employers, whose payroll policies preclude exempt status for employees under 29 C.F.R. § 541.118(a) because the employees' salaries have been subjected to reduction on the basis of the quality or quantity, may not escape the strictures of the Fair Labor Standards Act with merely a slap on the wrist. For example, if the regulation were read in the alternative, an employer who purposely reduced the salaries of its professional employees every time they were late for work would be able to take advantage of the "window of correction" because the reductions were made for "reasons other than lack of work." It is the subjecting of salary to reduction on the basis of quantity of work performed that precludes exempt status for these employees; to allow the employer to use the "window of correction" so easily would undercut the need for employer compliance with 29 C.F.R. § 541.118(a) prior to a Department of Labor investigation. Thus, we consider it essential that, in addition to having been made for reasons other than lack of work, the improper deductions also have been made inadvertently. This would prevent the incongruous situation of employers cynically undertaking corporate policies which subject the salaries of their professional, managerial and administrative employees to reduction for reasons other than lack of work, knowing that the exempt

status of the affected employees would be restored through reimbursement and a promise to comply, if the employer is caught. With that view, we will now consider whether the improper deductions made by MP were inadvertent.

The concept of inadvertence suggests a mistake or an oversight. One cannot be inadvertent while administering procedures which are deliberate and calculated. *See Knecht v. City of Redwood City,* 683 F.Supp. 1307, 1311 (N.D.Cal.1987). Those few courts addressing "inadvertence" have held that the subsection (6) exception was available to cover the fortuitous mistake made heedlessly. *See id.; Abshire,* 908 F.2d at 488–89. The Ninth Circuit has stated that:

> the thrust behind the regulations is to facilitate the determination whether an employer has a general policy of deducting for absences of less than a day or whether a deduction is made as a result of inadvertence or error. The exception in subsection (6) is for an employer that makes a one-time improper deduction and then corrects its error.

*Abshire,* 908 F.2d at 489.[11] *See also Dole v. Walker and Armstrong,* No. CIV–88–1371–PHX–RCB, *supra.*

The first inquiry is whether there was a general policy at MP which required that employees in grades 6 to 9 be docked pay for absences of less than a day. MP contends that at the time it developed its personnel policies and wrote its handbook, it intended the policy to apply only to the non-exempt employees in grades 1 through 5. Affidavit of John T. O'Neill (June 26, 1990), at ¶ 12. Moreover, it maintains that it had no idea at the time that its exempt employees would misconstrue the instructions contained in the Policy Guide and Handbook and charge time to "absence

without pay." MP asserts that its actual policy with respect to absences of less than a day was to have the employee discuss his absence with his supervisor and then record this time in the appropriate overhead account (sick time or vacation) or as "Paid Absence." *Id.* at ¶ 11. In that regard, it argues that no employee in grades 6 through 9 was ever directed to record an absence of less than a day as "absence without pay." Indeed, by affidavit, some employees have stated that they never charged absences of less than one day to the "absence without pay" account nor did they feel obliged to do so.

The Department of Labor notes both the Employee Handbook and the Policy Guide indicate that when an employee was absent from work for less than a day, that employee was to make up the time, charge it to an accrual account or to record the time as "absent without pay," resulting in a salary reduction. Moreover, the investigator for the Department of Labor has stated, by affidavit, that the employees she interviewed understood that if they were absent from work and did not make up the time or charge it to an overhead account, they would be docked pay. Affidavit of Patricia Silberman (September 27, 1990), at ¶¶ 10–17. We note that none of the eight employees interviewed by the Department of Labor ever had been docked.

Another fact to be considered in determining whether a policy of docking exempt employees was in operation, is that over the 19 month period in question, cash dockings representing approximately 100 hours of work and involving 24 employees were made. However, during that same period roughly 400 employees worked well over one million hours. Thus, the actual deductions made were *de minimis.*

---

**11.** Defendants correctly note that *Abshire* can be distinguished on the basis that the County never sought to avail itself of the "window of correction." Indeed, the Ninth Circuit noted that "[t]his provision [§ 541.118(a)(6) ] is of no relevance in the case of an employer that ... has adopted an express policy of deducting for part-day absences when an employee has not accrued leave, and has continued to adhere to such policy." *Abshire,* 908 F.2d at 489. This

might be read to suggest that subsection (6) would cover situations in which there was current compliance. However, it should be noted that the court did draw a distinction between an inadvertent deduction and a policy of making deductions, which leads us to conclude that even the Ninth Circuit required inadvertence and compliance as prerequisites for application of the "window of correction." *See id.* at 488–89.

The record suggests that, corporate literature notwithstanding, the intended and actual policy of MP with respect to the employees in grades 6 through 9 was to not dock them for absences of less than a day. The Department of Labor has not made a showing to contradict this conclusion other than its investigator's affidavit containing the statements of some employees indicating otherwise. The circumstances, taken in total, suggest that the actual deductions made by MP were the result of confusion on the part of the employees who chose to self-dock. Indeed, Ms. Silberman's affidavit indicates that she was told by MP that some of the deductions were made by employees in their first week of employment. It is easy to see how an employee would make such an error because he or she was unaware of an informal policy.

Two errors in this case led to the dockings—both of these can be characterized as inadvertent. The first error is attributable to MP who erred in the drafting of its time sheets and its corporate literature, failing to foresee how some exempt employees might take the instructions literally. The second error is on the part of the employees who self-docked because they were unaware of how the company actually handled absences of less than a day by employees in grades 6 to 9.

Finally, though the dockings were not a one-time error, see *Abshire*, 908 F.2d at 489, their occurrence was infrequent enough to negate the possibility of a pattern. Thus, we conclude that the dockings were inadvertent and, in the context of subsection (6), not the result of a general policy requiring that the salaries of exempt employees be subjected to reduction for absences of less than a day.

The task here has been to interpret the undisputed facts presented in order to determine their significance. Though the explanation of why the barred reductions were made is disputed, summary judgment is nevertheless appropriate. We find that the conditions for proper utilization of the "window of correction" have been satisfied by Malcolm Pirnie, Inc. and the exempt status of the employees in grades 6

through 9 has been preserved by the firm's reimbursement of the affected employees and its promise to comply with the FLSA regulations in the future.

One final observation is in order. We believe that this matter came to the attention of the Department of Labor because overtime was paid to the professionals employed by MP to compensate them for many hours worked beyond a normal forty hour workweek. It is somewhat ironic that none of this litigation would have occurred if MP had not been generous in its treatment of its exempt employees.

CONCLUSION

Partial summary judgment is granted in favor of the defendant, Malcolm Pirnie, Inc., conditioned upon the company submitting a new affirmation of its promise to comply with 29 C.F.R. § 541.118(a). (*See* footnote 10, *supra.*) The Department of Labor's motion for summary judgment is denied with the same condition. Malcolm Pirnie, Inc. is ordered to submit a new affirmation within ten days of the date of this decision.

SO ORDERED.