Lynn **MARTIN, Secretary of Labor, United States Department of Labor, Plaintiff–Appellant,**

v.

**MALCOLM PIRNIE, INC., Defendant–Appellee.**

**No. 1710, Docket 91–6138.**

United States Court of Appeals, Second Circuit.

Argued Nov. 1, 1991.

Decided Nov. 20, 1991.

**612**

Marva M. Peace–Jackson, Washington, D.C. (David S. Fortney, Deputy Sol. of the U.S. Dept. of Labor, Monica Gallagher, Associate Sol., William J. Stone, Counsel for Appellate Litigation, Washington, D.C., Patricia M. Rodenhausen, Regional Sol., New York City, of counsel), for plaintiff-appellant.

Ronald M. Green, New York City (Gilbert J. Ginsburg, Epstein Becker & Green, P.C., Sandra J. Boyd, Gerard P. Cavaluzzi, Malcolm Pirnie, Inc., Robert L. Jauvtis, Bickel & Brewer, of counsel), for defendant-appellee.

Before OAKES, Chief Judge, FEINBERG and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Plaintiff-appellant Lynn Martin, Secretary of the United States Department of Labor ("Secretary"), appeals from a judgment entered in the United States District Court for the Southern District of New York (Gerard L. Goettel, *Judge*), condition-

ally granting defendant-appellee Malcolm Pirnie, Inc.'s ("MP") motion for partial summary judgment and dismissing the action. The Secretary initiated the underlying action against MP seeking to remedy MP's alleged violation of the Fair Labor Standards Act ("FLSA" or "Act"), 29 U.S.C. § 201 *et seq.* (1988). Essentially, the Secretary contended below, and now argues on appeal, that MP violated the FLSA by failing to provide adequate compensation to a group of employees for overtime hours they worked. MP, in response, claimed that the employees at issue were "bona fide executive" employees and therefore were not covered by the overtime provisions of the FLSA. *See* 29 U.S.C. § 213(a)(1).

■ In order to attain "bona fide executive" status, an employee must meet both a salary basis and a duties test. *See* 29 C.F.R. § 541.1 (1990). On cross-motions for partial summary judgment, the parties submitted to the district court the sole issue of whether the employees in question— who are concededly well-paid and perform professional and managerial functions— met the salary basis requirement. Upon reviewing the applicable regulations, the district court concluded that, although these employees were required to work a certain number of hours each week, they were paid on a salary basis. The district court thus granted MP's motion for partial summary judgment. Because the Secretary withdrew its remaining claims, the district court dismissed the action with prejudice. Consequently, the central issue on this appeal is whether these highly compensated employees, who are normally characterized as professionals, are properly considered hourly, rather than salaried, employees if their compensation is subject to reduction for working less than eight hour days.

For the reasons set forth below, we reverse the judgment of the district court.

## BACKGROUND

MP is a corporation that specializes in providing environmental engineering, architectural, scientific and planning services to various industrial clients. MP employs approximately 900 individuals in its twenty-four nation-wide offices.

Once an employee joins MP, he or she is assigned a salary grade between 1 and 11. The basic issue in this case concerns MP's compensation scheme for employees in grades 6 through 9. These employees include engineers, accountants, architects, scientists, supervisors and administrators. By ordinary standards, grade 6 through 9 employees are well-paid professionals. Depending on their positions, they earn between $30,000 and $70,000 each year. Although employees in grades 6 through 9 are paid a fixed amount on a bi-weekly basis, they are required to work at least eight hours a day. MP compensates employees in grades 6 through 8 on a time-and-a-quarter basis for overtime hours worked, while it pays grade 9 employees straight time for overtime hours.

Until December 8, 1988, MP employment manuals provided that an employee in any pay grade who missed a fraction of a workday would have a pro rata amount deducted from his or her pay, unless he or she made up the lost time or charged it to his or her vacation or sick leave. From May 1, 1987 to December 8, 1988, MP deducted a total of $3,269.78 from twenty-four different grade 6 through 9 employees' salaries for fractions of days that these employees missed and did not make up or charge to accrued leave time. On December 8, 1988, MP changed its policy regarding absences of less than a day. Under MP's new rules, grade 6 through 9 employees could charge part-day absences to an overhead account rather than to their individual accounts. Moreover, MP ensured that these employees' wages would not be reduced if they worked less than an eight hour day. After initiating this new policy, MP reimbursed the twenty-four employees and former employees for all salary deductions MP had made as a result of their part-day absences.

Shortly after MP made these policy revisions, the Secretary initiated the underlying action in the United States District Court for the Southern District of New York, alleging that MP had violated the

FLSA by compensating employees in grades 6 through 9 at less than a rate of time-and-a-half for overtime hours worked. *See* 29 U.S.C. § 207(a)(1) (requiring employers to compensate employees on a time-and-a-half basis for each hour they work in excess of the usual forty hour workweek). Accordingly, the Secretary sought to permanently enjoin MP from violating the overtime pay provisions of the FLSA and from withholding unpaid overtime compensation due MP employees. Additionally, the Secretary sought prejudgment interest on amounts unlawfully withheld, as well as costs.

In its answer, MP claimed that the employees in question were "bona fide executives" and therefore were not covered by the FLSA's overtime pay provision. *See* 29 U.S.C. § 213(a)(1) (exempting, *inter alia,* executives, managers and professionals from overtime pay requirements). In order to be considered a "bona fide executive," an employee must be paid on a salary basis. *See* 29 C.F.R. § 541.1. The primary dispute between the parties below was whether MP, by subjecting grade 6 through 9 employees to pay reductions as a result of part-day absences, had converted these employees from salary based to hourly employees. If so, MP could not claim that the employees were exempt under the "bona fide executive" exception to the FLSA. The parties each moved for summary judgment on this issue.

The district court concluded that even though the deductions for absences of less than a day may have been technically impermissible under the salary basis test, *see* 29 C.F.R. § 541.118(a), they were made inadvertently. *See Dole v. Malcolm Pirnie, Inc.,* 758 F.Supp. 899, 907–08 (S.D.N.Y.1991). Because the regulations permit an employer to correct an impermissible, but inadvertent, pay reduction, and, in so doing, preserve the affected employee's salaried status, *see* 29 C.F.R. § 541.-118(a)(6), the district court concluded that MP's deductions for partial day absences did not, by themselves, render all grade 6 through 9 employees non-salaried. Accordingly, the district court granted MP's motion for partial summary judgment. How-

ever, the court conditioned the judgment on MP's promise to clarify its policy regarding partial day absences and to comply strictly with § 541.118(a). Because the Secretary had withdrawn all of its other claims, the district court entered judgment dismissing the action with prejudice. This appeal followed.

### DISCUSSION

■ It is well-settled that a district court may grant a party's motion for summary judgment if the party can establish that "there is no genuine issue as to any material fact" and that, based on the facts presented, "[it] is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Here, the parties do not dispute the material facts at issue. Therefore, our only task is to determine whether the district court erred in concluding that, as a matter of law, MP's grade 6 through 9 employees met the salary basis test and thus were eligible for "bona fide executive" status. We review *de novo* the district court's judgment. *See Stroup v. GCS Service, Inc.,* 938 F.2d 20, 22 (2d Cir.1991); *Prunier v. City of Watertown,* 936 F.2d 677, 679 (2d Cir.1991).

■ Initially, we note that because the FLSA is a remedial act, its exemptions, such as the "bona fide executive" exemption claimed in this case, are to be narrowly construed. *See Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); *Mitchell v. Lublin, McGaughty & Assoc.,* 358 U.S. 207, 211, 79 S.Ct. 260, 263, 3 L.Ed.2d 243 (1959). Indeed, an employer bears the burden of proving that its employees fall within an exempted category of the Act. *See Corning Glass Works v. Brennan,* 417 U.S. 188, 196–97, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974); *Arnold,* 361 U.S. at 392, 80 S.Ct. at 452; *Donovan v. Carls Drug Co., Inc.,* 703 F.2d 650, 652 (2d Cir.1983). Consequently, MP must overcome the presumption that the "bona fide executive" exemption does not apply to its grade 6 through 9 employees. More specifically, MP must first

prove that these employees were paid on a salary basis.

■ According to Department of Labor regulations accompanying the FLSA,

> [a]n employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. *Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked.* This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.

29 C.F.R. § 541.118(a) (emphasis added). Generally, an employer that maintains the discretion to reduce an employee's compensation as a result of the employee's hours or the quality of the employee's work, may not consider the employee to be paid on a salary basis.

■ Based on the definition contained in § 541.118(a), we have previously held that an employee who can be docked pay for missing a fraction of a workday must be considered an hourly, rather than a salaried, employee. *See Whitmore v. Port Authority of New York & New Jersey,* 907 F.2d 20, 21 (2d Cir.1990); *Donovan,* 703 F.2d at 652; *accord Abshire v. County of Kern,* 908 F.2d 483, 486 (9th Cir.1990) ("[s]ubjecting an employee's pay to deductions for absences of less than a day, including absences as short as an hour, is completely antithetical to the concept of a salaried employee."), *cert. denied,* —— U.S. ——, 111 S.Ct. 785, 112 L.Ed.2d 848 (1991). Most courts that have addressed the issue have agreed that if an employer has a policy of reducing an employee's compensation for fractions of days that the employee is absent from work, then the employer may not invoke the "bona fide executive"

exemption with regard to that employee. *See Abshire,* 908 F.2d at 486; *Harrison v. District of Columbia,* Nos. 87–0809; – 2275; 88–1028; –3223, 1991 WL 104260, at *5, 1991 U.S. District LEXIS 4992, at *14 (D.D.C. Apr. 16, 1991); *Wilks v. District of Columbia,* 721 F.Supp. 1383, 1385 (D.D.C.1989); *Banks v. City of North Little Rock,* 708 F.Supp. 1023, 1025 (E.D.Ark. 1988); *Hawks v. City of Newport News,* 707 F.Supp. 212, 214–15 (E.D.Va.1988); *Persons v. City of Gresham,* 704 F.Supp. 191, 194 (D.Or.1988); *Knecht v. City of Redwood City,* 683 F.Supp. 1307, 1311 (N.D.Cal.1987); *cf. D'Camera v. District of Columbia,* 693 F.Supp. 1208, 1212 (D.D.C.1988); *but see Harris v. District of Columbia,* 709 F.Supp. 238, 242–43 (D.D.C.1989) (under employer's policy, no salary deductions were ever made for portions of days plaintiff-employees missed, thus court found that plaintiff-employees were eligible for bona fide executive exemption); *District of Columbia Nurses' Ass'n v. District of Columbia,* No. 87–1675, 1988 WL 156191, 1988 U.S. Dist. LEXIS 16500 (D.D.C. Jan. 28, 1988) (deductions for fractions of days were only made in rare circumstances in which employees had exhausted their leave, therefore such policy did not warrant a loss of exempt status).

Upon applying § 541.118(a)'s definition of "salary basis" to the facts of this case, the district court specifically noted, "we have our doubts as to whether [MP's] scheme of compensation comports with the requirements of [that section]." *Dole,* 758 F.Supp. at 903–04. Indeed, because MP subjected grade 6 through 9 employees to pay deductions on the basis of part-day absences, it is clear that, under the strict definition contained in § 541.118(a), these employees may not be considered salaried. *See Whitmore,* 907 F.2d at 21; *Donovan,* 703 F.2d at 652. However, as the district court recognized, our inquiry does not end at this point.

■ Section 541.118(a) specifically notes the existence of a number of exceptions to its mandate that, in order to be considered salaried, an employee must be paid a speci-

fied amount each week, notwithstanding the number of hours he or she works. Among the exceptions listed in the regulations is what is known as the "window of correction." *See* 29 C.F.R. § 541.118(a)(6). This provision allows an employer that makes an impermissible, but inadvertent, deduction to the compensation of an otherwise salaried employee to correct the error and thereby bring its compensation scheme into strict compliance with § 541.118(a). *See* 29 C.F.R. § 541.118(a)(6). Specifically, § 541.118(a)(6) provides:

> The effect of making a deduction which is not permitted under these interpretations will depend upon the facts in the particular case. Where deductions are generally made when there is no work available, it indicates that there was no intention to pay the employee on a salary basis. In such a case the exemption would not be applicable to him during the entire period when such deductions were being made. On the other hand, *where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.*

(Emphasis added). Basically, the "window of correction" permits employers to treat otherwise eligible employees as salaried, regardless of the employer's one-time or unintentional failure to adhere to § 541.-118(a)'s requirements. *See Abshire*, 908 F.2d at 489; *Knecht*, 683 F.Supp. at 1311 ("The exception in subsection (6) applies to one-time or inadvertent deductions, not to a settled policy of subjecting the pay of employees to reductions.").

▉ The district court concluded that MP could invoke the "window of correction" in this case. First, the district court determined that MP did not have a *policy* of docking pay from grade 6 through 9 employees. In making this assessment, the court relied on the fact that over the period in question, MP only made cash dockings to twenty-four employees totalling $3,269.78. Because the occurrences of

docking were infrequent, the court determined that the deductions were not the result of an underlying pattern or scheme. Second, the court noted that MP has reimbursed those employees who suffered a pay loss as a result of its pay deductions for partial day absences. Finally, the court observed that MP revised its policy and promised to comply with § 541.118(a) in the future. Therefore, the district court found that MP could use the "window of correction" to "retroactively restore exempt status to [grade 6 through 9] employees who, *inter alia*, had their pay subject to reduction for absences of less than a day." *Dole*, 758 F.Supp. at 904. We disagree.

Based on the undisputed facts, we cannot find that MP met its burden of proving that the "window of correction" was available to it. Initially, we note that MP's Policy Guide, which was distributed to all new employees, stated unequivocally that:

> If a staff member loses time because of inclement weather, car problems, or medical reasons, s/he may arrange with his/her Group Manager to make up the time, or to charge it to vacation or optional holidays; otherwise it will be treated as an absence without pay. Whatever the arrangement, it should be recorded properly on the time sheet.

Thus, the Policy Guide clearly allowed proportional salary deductions for *all* employees—including those paid at grade levels 6 through 9—who did not complete full eight hour days. Similarly, MP's Handbook of Information for Staff provided:

> Time lost from work because of snow, car trouble, etc. is usually considered as absence without pay, but arrangements may be made with your Group Leader to make up the time or to charge it to vacation or optional holidays.

Here again, MP did not suggest that its policy of docking pay for portions of days that were missed was applicable only to lower pay grade employees. Moreover, MP's Director of Human Resources, John O'Neill, indicated to a Department of Labor Investigator that employees in pay grades 1 through 5, who MP conceded were subject to FLSA overtime requirements, were

 

paid in essentially the same manner as those employees in grades 6 through 9. Indeed, the investigator ascertained that quarterly pay docking reports did not distinguish between employees in grades 1 through 9. Additionally, the investigator submitted an affidavit detailing interviews with eight employees in grades 6 through 9 who each understood that under MP's policy they would be docked pay for working less than a forty hour workweek unless they made up the time or charged it to sick leave or vacation leave. Finally, we note that a company's general requirement that its employees work at least eight hours in a day strongly suggests that the company views these employees as hourly and not salaried.

Although the district court emphasized that only twenty-four of the approximately 400 employees in question actually had amounts deducted from their paychecks, it is clear that the remaining grade 6 through 9 employees were required to deduct from personal leave time or make up the hours they missed in order to avoid salary deductions. Furthermore, "[s]ection 541.118(a) does not require that a deduction for an absence of less than a day *actually* have been made, but only that an employee's pay be 'subject to' such a deduction." *Abshire*, 908 F.2d at 487 (footnote omitted); *see also Banks*, 708 F.Supp. at 1025 (exemption may be lost even if no actual deductions have been made); *Hawks*, 707 F.Supp. at 215 (same); *Persons*, 704 F.Supp. at 194 (same); *Knecht*, 683 F.Supp. at 1310 (same). Here, it is apparent that the employees were subject to deduction.

In sum, the evidence before the district court clearly showed that until December 8, 1988, MP maintained a policy of docking pay to grade 6 through 9 employees for fractions of the workday they missed. Thus, MP was not entitled to invoke the "window of correction" with regard to these employees and, as a result, they may not be considered to have been paid on a salary basis. Accordingly, the district court erred in granting MP's motion for partial summary judgment.

By enacting the overtime provision of the FLSA, Congress intended to ensure that appropriate overtime payments are made to eligible employees, regardless of the magnitude of each employee's monthly compensation. Because we find that grade 6 through 9 employees were not exempt under the FLSA, we conclude that MP impermissibly withheld overtime payments that were due and owing.

## CONCLUSION

Based on the foregoing, we reverse the judgment of the district court dismissing the action and remand this case for further proceedings consistent with this opinion.