**Robert REICH, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**MALCOLM PIRNIE, INC., Defendant.**

**No. 89 Civ. 3554 (GLG).**

United States District Court, S.D. New York.

May 21, 1993.

Marshall J. Breger, Sol. of Labor, Patricia M. Rodenhausen, Regional Sol., U.S. Dept. of Labor, New York City by Percy Miller, for plaintiff.

Epstein Becker & Green, P.C. by Gilbert J. Ginsburg, Sandra J. Boyd, Gerard P. Cavaluzzi, Washington, DC, for defendant.

## OPINION

GOETTEL, District Judge.

This case concerns the pay practices of defendant Malcolm Pirnie, Inc. ("MP"), an environmental engineering company. In particular, the case involves the question of whether certain professional and managerial employees are entitled to time-and-a-half overtime under the Fair Labor Standards Act ("FLSA") because they are, in effect, hourly not salaried employees. This issue turns on whether they are subject to pay reductions for absences of less than a day's duration.

In May 1989, the Secretary of Labor (then Lynn Martin) filed a complaint against defendant Malcolm Pirnie, Inc. on behalf of the Department of Labor ("DOL") alleging that defendant had violated §§ 7 and 15(a)(2) of the FLSA by failing to pay employees in grades 6 through 9 time-and-a-half for overtime. Employees with these salary grades include engineers, accountants, architects, and various administrators and supervisors who earn between $30,000 and $70,000 a year. The Secretary sought to enjoin defendant from future violations and to restrain the withholding of backwages owed to the affected workers.

In June 1990, defendant moved for partial summary judgment arguing that it was exempt from the FLSA's overtime provisions from May 1987 to December 1988 because it met the salary test set out in the Act's accompanying regulations and the approximately 400 employees in grades 6 through 9 in fact met this test during that period. Plaintiff filed a cross-motion for partial summary judgment.

In its supporting papers, the Secretary withdrew DOL's objections to the exemptions claimed for the employees in grades 6 through 9 based insofar as their duties were concerned. Therefore, the only remaining issue before the court was whether defendant was entitled to an exemption from the FLSA's overtime requirements because the employees in grades 6–9 were compensated on a salary basis for the period between May 1, 1987 and December 8, 1988.

On March 4, 1991, the court granted defendant's motion on the condition that it agree to abide by the salary test provisions set out in 29 C.F.R. § 541.118(a). *Dole v. Malcolm Pirnie, Inc.*, 758 F.Supp. 899 (S.D.N.Y.1991). The facts giving rise to this dispute were set forth in our opinion as follows:

During the period of May 1, 1987 to December 8, 1988, 24 employees in grades 6 through 9 had their compensation reduced after recording an absence of less than a day in the "absence without pay" column on their time sheet. The total amount of the payroll deductions was $3269.78. This money was later reimbursed to the affected employees.

On December 8, 1988, MP amended its policy concerning absences of less than a day and specifically instructed its employees in grades 6 through 11 to charge absences of less than a day to a new overhead account called "Paid Absence" and not to their individual leave accounts.

In May 1989, the Department of Labor commenced this suit alleging that employees in MP's pay grades 6 through 9 during the period of May 1, 1987 through December 8, 1988 were not exempt from the overtime provisions of the FLSA and were therefore entitled to payment of overtime wages at the rate of time and one half their regular rate of pay. At stake is a sum of roughly $500,000 which is the difference between the actual overtime compensated at the MP rates and that time calculated at the statutory time and one half.

\* \* \* \* \* \*

The material facts here are not in dispute. The parties agree that 24 MP employees in salary grades 6 through 9 were subjected to reductions in compensation as a result of their having recorded their time in the "absence without pay" account on their time sheets. The parties also agree that these parties were reimbursed for the deductions and that MP has promised to comply with Department of Labor regula-

tions in the future. Additionally, there is no question that both the MP Policy Guide and Handbook instructed all employees losing time because of inclement weather, car problems, or medical reasons to make up the time or charge it to accrued time or an "absence without pay" account.

*Id.* at 901.

\* \* \* \* \* \*

MP argues that even if the payroll practices applied to these employees was not structured to satisfy the salary basis test of 29 C.F.R. § 541.118(a), by changing this policy, reimbursing the employees and promising to comply, the exempt status of these employees was preserved by a "window of correction" set forth in 29 C.F.R. § 541.118(a)(6).

*Id.* at 902.

\* \* \* \* \* \*

Here, MP has acknowledged that some barred reductions did occur, albeit in a comparatively small number of cases. Moreover, MP concedes that its method of accounting for employee time prior to December 8, 1988 created the potential for these reductions.

*Id.* at 903.

\* \* \* \* \* \*

Another fact to be considered in determining whether a policy of docking exempt employees was in operation, is that over the 19 month period in question, cash dockings representing approximately 100 hours of work and involving 24 employees were made. However, during that same period roughly 400 employees worked well over one million hours. Thus the actual deductions made were *de minimis*.

The record suggests that, corporate literature notwithstanding, the intended and actual policy of MP with respect to the employees in grades 6 through 9 was to not dock them for absences of less than a day.

*Id.* at 907–908.

\* \* \* \* \* \*

The circumstances, taken in total, suggest that the actual deductions made by MP were the result of confusion on the part of the employees who chose to self-dock. Indeed, Ms. Silberman's affidavit indicates that she was told by MP that some of the deductions were made by employees in their first week of employment. It is easy to see how an employee would make such an error because he or she was unaware of an informal policy.

\* \* \* \* \* \*

Thus, we conclude that the dockings were inadvertent and, in the context of subsection (6), not the result of a general policy requiring that the salaries of exempt employees be subjected to reduction for absences of less than a day.

The task here has been to interpret the undisputed facts presented in order to determine their significance.

*Id.* at 908.

■ The Second Circuit reversed in November 1991 and remanded the case to the district court. *See Martin v. Malcolm Pirnie, Inc.*, 949 F.2d 611 (2d Cir.1991). The Supreme Court denied defendant's petition for a writ of certiorari. 113 S.Ct. 298 (1992). The Court of Appeals' reversal proceeded from the same underlying facts but reached a different conclusion. The Court held:

From May 1, 1987 to December 8, 1988, MP deducted a total of $3,269.78 from twenty-four different grade 6 through 9 employees' salaries for fractions of days that these employees missed and did not make up or charge to accrued leave time. On December 8, 1988, MP changed its policy regarding absences of less than a day. Under MP's new rules, grade 6 through 9 employees could charge part-day absences to an overhead account rather than to their individual accounts. Moreover, MP ensured that these employees' wages would not be reduced if they worked less than an eight hour day. After initiating this new policy, MP reimbursed the twenty-four employees and former employees for all salary deductions MP had made as a result of their part-day absences.

*Id.* at 613.

\* \* \* \* \* \*

The primary dispute between the parties below was whether MP, by subjecting grade 6 through 9 employees to pay reductions as a result of part-day absences, had converted these employees from salary based to hourly employees. If so, MP could not claim that the employees were exempt under the "bona fide executive" exception to the FLSA. The parties each moved for summary judgment on this issue.

\* \* \* \* \* \*

Here, the parties do not dispute the material facts at issue. Therefore, our only task is to determine whether the district court erred in concluding that, as a matter of law, MP's grade 6 through 9 employees met the salary basis test and thus were eligible for "bona fide executive" status. We review *de novo* the district court's judgment.

*Id.* at 614.

The Court of Appeals then concluded that on the undisputed facts they could not find that the window of correction was available because the language in the Policy Guide and the Handbook of Information for Staff allowed deductions from all employees. The court noted that the pertinent regulation did not require that deductions actually had been made, but only that the employees' pay would be "subject to" such a deduction. They concluded that:

> In sum, the evidence before the district court clearly showed that until December 8, 1988, MP maintained a policy of docking pay to grade 6 through 9 employees for fractions of the workday they missed. Thus, MP was not entitled to invoke the "window of correction" with regard to these employees and, as a result, they may not be considered to have been paid on a salary basis.

*Id.* at 617.

During the ensuing discovery, plaintiff forwarded to defendant a summary of the backwages due during the period at issue. The amount totaled $515,455.50. Plaintiff points out that, since the Second Circuit has held that the subject employees were not salaried and defendant failed to properly pay them time-and-a-half overtime, it is entitled to the entry of a judgment restraining continued withholding of backwages together with prejudgment interest.

Defendant opposes this motion arguing that factual issues remain dispute concerning whether it had a policy of docking the pay of exempt employees, whether Malcolm Pirnie relied upon the DOL's regulations in adopting a window of correction entitling it to a judgment pursuant to the Portal-to-Portal Act, and whether the overtime due has already been paid. Defendant argues that the issues are material to its Portal-to-Portal Act defense and were not decided by the Second Circuit on appeal.

In the view of this court, the key issue was whether Malcolm Pirnie in practice had a policy of docking employees for absences of less than a day, or whether reductions were simply inadvertent. We held that if no practice existed and the reductions were inadvertent, MP might have complied with the "window of correction" to retain the exempt status of its grades 6–9 employees.

Defendant contends that whether in fact a policy of docking employees' pay was in place was not decided by the Second Circuit and may be explored upon remand in accordance with the legal standard set forth in the Second Circuit's decision. As the quotations from that court's opinion clearly indicate, it was not concerned with the application of the policy in practice, but rather possibilities that existed under the Policy Guide.

In our earlier opinion, we recognized that reductions in pay were made for partial absences for a small number of employees and MP's accounting methods permitted such reductions. *See Malcolm Pirnie,* 758 F.Supp. at 903. However, we concluded that MP had restored its exemption by complying with the window of correction exception by reimbursing its employees who had suffered losses in pay for partial absences. In so ruling, we held that the facts supporting a conclusion that the actual dockings in pay that occurred were inadvertent. We stressed that only 24 employees were docked for some 100 hours in a workforce of over 400 employees who worked over a million hours. *Id.* at 907. Notwithstanding the corporate literature, we

concluded that the reductions were infrequent and MP's actual policy was not to dock employees for partial absences. *Id.* at 908.

The Second Circuit, viewing the same undisputed underlying facts, reached contrary conclusions. Defendant argues that "the Second Circuit in its opinion appears to have assumed ... that Malcolm Pirnie had a policy of docking the pay of its exempt employees." Def.'s Brief at 4. Defendant then goes on to argue that the facts which the Second Circuit found undisputed, were in fact disputed by the record as a whole. Defendant also stresses that the Circuit Court's factual assessment was very different from this court's original factual findings.

These arguments are unavailing. Both this court and the Second Circuit viewed the material underlying facts as undisputed. The only difference between this court's initial holding and the Second Circuit's decision was the different conclusions drawn from these facts. Reviewing the record *de novo*, the Second Circuit concluded that a policy of docking pay existed both because the company's Policy Guide allowed it, and on occasions reductions occurred. The legal conclusions it drew from the factual record stand as the law of this case.

We are in no position to challenge its conclusions. Defendant is barred by the law of the case doctrine from relitigating the issue of whether a policy of docking pay for partial absences existed, or whether the window of correction exception is available to it. The Second Circuit's decision rested on its assessment of the evidentiary record, in particular MP's Policy Guide and Handbook of Information for Staff. The court also took account of the statement given by MP's Director of Human Resources who conceded that overtime was paid in essentially the same manner for employees in grades 1–5 and 6–9. Based on such evidence, the court expressly found that MP's policy "clearly allowed proportional salary deductions for *all* employees—including those paid at grade levels 6 through 9." *Id.* 949 F.2d at 616.

Defendant maintains that MP's policy for grade 6–9 employees is still in dispute. It is not. The Second Circuit spoke clearly and decisively on the issue after conducting its own examination of the factual record. It concluded by stating that "MP impermissibly withheld overtime payments that were due and owing." *Id.* at 617.

Defendant spends much time arguing that the Second Circuit's ruling on the salary basis was new law in the field and should therefore not be applied retroactively on defendant. Defendant submits affidavits from labor lawyers to support its point. In response, we highlight two aspects of the Second Circuit's opinion. First, the court stated that it "had previously held that an employee who can be docked pay for missing a fraction of a workday must be considered an hourly, rather than a salaried, employee." *Id.* at 615 (citing cases). Second, as we have already noted, the court concluded its opinion by saying that "MP impermissibly withheld overtime payments that were due and owing." *Id.* at 617. We can reach only one conclusion based upon these statements. The Second Circuit did not consider its holding on salary basis novel and it did find that defendant owes its grade 6–9 employees overtime under the FLSA as hourly employees, meaning it owes them time-and-a-half.

■ The law of the case doctrine concerns the practice of courts generally not to reopen what has already been decided. *Riley v. Meba Pension Trust*, 586 F.2d 968, 970 (2d Cir.1978). The law of the case applies to every issue that has been decided either expressly or by necessary implication. As we have discussed, the Second Circuit decided the critical issues regarding MP's policy of docking employees for partial absences and the inadvertence of its reductions.

Pursuant to the Second Circuit's ruling, defendant's failure to pay the backwages was not in conformity with the FLSA's regulations. The Second Circuit held that the law contains no ambiguity. An employer with a policy of reducing employee compensation for fractions of days missed may not invoke the salary basis exception for not paying overtime to them.

■ Since the court found the window of correction exception inapplicable, it follows that defendant's Portal-to-Portal Act defense falls. If defendant's actions are found in

violation of the Act or its regulations, good faith is not a defense. The Second Circuit found a policy in place by which deductions were (or could have been) made for partial absences. Deductions were expressly permitted under the Handbook and Policy Guide and, under the circumstances, MP was not entitled to invoke the window of correction. Given this, we cannot find that defendants' actions represented an unintentional failure to adhere to the FLSA's overtime requirements. The Second Circuit's holding that a policy of deductions for partial absences was in place belies any notion that such deductions were inadvertent or accidental. Where actions do not conform with regulations, good faith cannot save the day. *E.E.O.C. v. Home Ins. Co.*, 672 F.2d 252, 265 (2d Cir.1982).

■ Consistent with the Second Circuit's decision, we grant plaintiff's motion for summary judgment. Defendant's retention of sums owed to grade 6–9 employees represents an affront to the Act's stated policy of ensuring that overtime due to eligible employees is paid. Defendant's continued resistance to repaying the improperly withheld backwages is unjustified. Pursuant to 29 U.S.C. § 217 and clear public policy, defendant is enjoined from continuing to withhold any unpaid backwages. Defendant must also pay pre-judgment interest on the overtime compensation due.

At this point, we decline to enjoin MP from any future violations of the FLSA. The Policy Guide has already been changed. The affected employees are no longer subject to deductions for missing a part day of work, and, consequently, are no longer entitled to overtime. We presume and expect that defendant will fully comply not only with this court's decision but also with the FLSA to avoid further violations.

The total amount of backwages due is $515,455.50. Added to this is a sum representing prejudgment interest. Because an accounting of the prejudgment interest due is a complex calculation involving many different grade 6–9 employees and changing interest rates pursuant to 26 U.S.C. § 6621, we direct plaintiff, with copies to defendant, to submit within 30 days an accounting of the prejudgment interest due. Besides the total

amount due, the submission should include, if reasonably possible, the dates covered and the applicable rates.

SO ORDERED.