**C.D. JOINER, on behalf of himself and others similarly situated, Plaintiff,**

**v.**

**CITY OF MACON, Defendant.**

**Civ. A. No. 79–287–MAC (WDO).**

United States District Court, M.D. Georgia, Macon Division.

Oct. 31, 1986.

David Mincey, Macon, Ga., Charles Orlove, Chicago, Ill., for plaintiff.

W. Warren Plowden, Jr., Joan Wooley, City Atty., Macon, Ga., for defendant.

## ORDER

OWENS, Chief Judge.

This class action was brought pursuant to the Fair Labor Standards Act, 29 U.S. C.A. §§ 201–219 (West 1986) (FLSA) to recover wages allegedly owed to plaintiffs for uncompensated overtime performed on behalf of the defendant. This court has previously entered judgment for some of plaintiffs in this action.[1] However, in that same order the court reserved judgment as to four plaintiffs who occupied the positions of "transit supervisors," pending consideration of the issue of whether these particular plaintiffs are exempt from the FLSA's coverage.

### Findings of Fact

1. The remaining plaintiffs involved in this action are John Kitchens, W.L. Jackson, Marvin Griffin, and Harold Bone.

2. Plaintiffs have all occupied the position of "transit supervisor" with the defendant City of Macon transit system. Plaintiffs Kitchens and Jackson started employment in this position in December of

---

1. *See Joiner v. City of Macon,* 627 F.Supp. 1532 (M.D.Ga.1986).

1981. Griffin occupied the position from 1950 until December, 1981. Plaintiff Bone worked in this position from sometime in 1968–1969 until December of 1981. (Depositions of J. Kitchens, p. 6; W. Jackson, p. 4; M. Griffin, p. 4; and, H. Bone, p. 4).

3. During all times relevant to this action, there have been two transit supervisor positions; one supervisor in charge of a day shift of bus operators and the other in charge of a night shift of bus operators. (Deposition of J. Kitchens, pp. 8–9).

4. The defendant employs approximately thirty-two bus operators. Approximately five of these are substitute drivers or "extras." (Depositions of J. Kitchens, pp. 44–45 and June Stearman, pp. 41–42).

5. The bus operators are directly supervised by the transit supervisor assigned to their shift. (Deposition of June Stearman, p. 11; Plaintiffs' Exhibit # 6).

6. Both transit supervisors answer to one head supervisor, who in turn answers to the executive director in charge of operations for the entire transit system. (Deposition of J. Stearman, pp. 9–11).

7. At all times relevant to this action, the plaintiffs were compensated the same amount each pay period regardless of the number of hours they actually worked. (Deposition of J. Stearman, pp. 81–82).

8. Plaintiffs Kitchens and Jackson have received compensation in excess of $250.00 per week for the entire periods of their employment with defendant. (Deposition of J. Kitchens, p. 53 and W. Jackson, p. 36).

9. Plaintiff Griffin received compensation in excess of $250.00 per week in 1980 and 1981. From 1976 to 1979 Griffin received at least $155.00 per week in compensation. (Depositions of M. Griffin, p. 43 and J. Stearman, p. 122).

10. Plaintiff Bone received compensation in excess of $250.00 per week from December, 1978, until December, 1981. Bone received at least $155.00 in compensation from January, 1976, until November, 1978. (Depositions of H. Bone, pp. 35–36 and J. Stearman, p. 122).

11. The official job description for the position of "transit supervisor," in use since 1977, provides in relevant part:

### TRANSIT SUPERVISOR

NATURE OF WORK

This is responsible work involving the *supervision of bus operators,* as pertains to the Macon Transit System. *Incumbent is responsible for dispatching of buses daily and supervising a large number of subordinate operators.* Work is under general supervision and reviewed by a superior through reports, observation and results achieved.

EXAMPLES OF WORK

Dispatches daily bus runs; supervise daily activities of subordinate operators, oversees compliance for adherance to daily routine bus schedules; instructs operators on safety, rules and practices; assigns and supervises operator trainees daily; oversees compliance of uniform dress code; gives out schedule information to public; audits operators running change daily; sign out transfers to operator; compiles accident and injury information for reports; may aid in locating lost or abandoned items left by passengers on prior trips; keeps record and files for administrative needs; and performs other related work as required.

(Plaintiffs' Exhibit # 6) (emphasis added). This description indicates that the position of transit supervisor is managerial in nature.

12. The plaintiffs, as transit supervisors, engaged in the following activities of a managerial or supervisory nature:

a. Monitoring the training of newly hired bus operators;

b. Ensuring on a day-to-day basis that bus operators were at work on time, and providing for substitute drivers when an absence occurred;

c. Keeping records concerning the various bus route assignments, customer complaints, and bus operator deficiencies;

d. Reporting to the head supervisor or executive director as to bus operator performance;

e. The monitoring, by radio communication, of each bus operator's status throughout the day;

f. The handling of customer complaints; and,

g. The monitoring of the bus operators' dress and behavior towards customers.

(Depositions of M. Griffin, pp. 9–8, 18–19, 28–30, 35–38; J. Kitchens, pp. 10, 17, 32–34, 40–41, 58, 66; H. Bone, pp. 6, 24–31; and W. Jackson, pp. 5–7, 13, 22–26).

13. The totality of the deposition testimony of all plaintiffs convinces this court that each engaged in the above stated managerial activities for at least eighty percent of each working day.

14. Weight was given, by the head supervisor and executive director, to plaintiffs' reports or recommendations concerning the following matters:

a. The retention of new bus operators after their training period ended;

b. The termination of a bus operator's employment; and,

c. Wage increases for bus operators with good work records.

(Depositions of J. Stearman, pp. 108–113, 119–121; J. Kitchens, pp. 41–42, 56–58; W. Jackson, pp. 10–16, 26–30; H. Bone, pp. 9, 26, 30–34; and M. Griffin, pp. 39–41).

15. The plaintiffs customarily and regularly exercised the following discretionary powers:

a. The decision to allow a new bus operator, in training, to begin the running of a scheduled route;

b. The decision of whether to send a bus operator home for a uniform violation;

c. The switching of hours between the day and night transit supervisors;

d. The discretion to assign any "extra" they desired to fill in for a sick or otherwise unavailable regular bus operator;

e. The discretion to apportion work hours among the bus operators; and,

f. The discretion to give the bus operators time off.

(Depositions of J. Kitchens, pp. 29, 34, 53–56, 62–64; W. Jackson, p. 14, 19–22; H. Bone, p. 23; and M. Griffin, pp. 19–20, 38).

*Conclusions of Law*

The main issue to be resolved is whether the plaintiffs are exempt from the overtime compensation requirements of the FLSA by virtue of 29 U.S.C.A. § 213(a)(1) (West 1986). This court finds that the plaintiffs are exempt as bona fide "executive" employees.

Section 213(a)(1) provides in relevant part:

The provisions of ... section 207 of this title *shall not apply* with respect to—

(1) any employee employed in a bona fide *executive*, administrtive, or professional capacity ...

(emphasis added). In determining whether this exemption applies the court has kept in mind that any such exemption from the FLSA is narrowly construed. *Hodgson v. Colonnades, Inc.*, 472 F.2d 42, 47 (5th Cir. 1973). Further, the burden of proof to demonstrate that an exemption applies is on the defendant employer. *Walling v. General Indus. Co.*, 330 U.S. 545, 547–48, 67 S.Ct. 883, 884, 91 L.Ed. 1088 (1947).

The court finds that the defendant has carried its burden of proving that plaintiffs Bone, Griffin, Jackson, and Kitchens were bona fide "executives" and, hence, exempt from the overtime provisions of the FLSA.

The test for determining "executive" status is that contained in the Code of Federal Regulations, 29 C.F.R. § 541.1 (1986).[2] This section provides in relevant part:

The term "employee employed in a bona fide executive * * * capacity" in

**2.** These Regulations are entitled to "controlling weight." *Mayhue's Super Liquor Stores, Inc. v.*

*Hodgson,* 464 F.2d 1196, 1199 (5th Cir.1972).

section 13(a)(1) of the Act shall mean any employee:

(a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department of subdivision thereof; and

(b) Who customarily and regularly directs the work of two or more other employees therein; and

(c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and

(d) Who customarily and regularly exercises discretionary powers; and

(e) Who does not devote more than 20 percent ... of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section ...; and

(f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week ...: *Provided, That an employee who is compensated on a salary basis at a rate of not less than $250 per week ... and whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof, and includes the customary and regular direction of the work of two or more other employees therein, shall be deemed to meet all the requirements of this section.*

(emphasis added). A reading of this section indicates that there are actually two separate tests, depending on the salary an employee received.

■ The first test encompasses employees who are compensated on a salary basis of not less than $250.00 per week. This is the so-called "short test." Plaintiffs Kitchens and Jackson come under this test for their entire employment periods. However, this test is only applicable to the final portions of plaintiffs Bone's and Griffin's employment periods, since they did not at all times receive in excess of $250.00 per week.

The short test has three requirements that must be met before an employee is deemed an "executive." These requirements are:

(1) The employee must be paid "on a salary basis";

(2) The employee's *primary duty* consists of the *management* of the enterprise in which he is employed or of a *customarily recognized department* thereof; and

(3) The employee customarily and regularly directs the work of two or more other employees therein.

*See id.*

Concerning the first requirement, 29 C.F.R. § 541.118(a) (1986) provides:

An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, *a predetermined amount* constituting all or part of his compensation, *which amount is not subject to reduction* because of variations in the quality or *quantity* of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.

(emphasis added). In accordance with the findings of fact set out above, all the plaintiffs were clearly compensated "on a salary basis."

The determination of whether an employee's *primary duty* is the *management* of a *customarily recognized subdivision* or department of the enterprise in which he is employed, must be based upon an evalua-

tion of all the relevant facts. 29 C.F.R. § 541.103 (1986).

29 C.F.R. § 541.104(a) provides that:

[t]he phrase "a customarily recognized department or subdivision" is intended to distinguish between a mere collection of men assigned from time to time to a specific job or series of jobs and a unit with permanent status and function. ... [the employee] must be in charge of and have as his primary duty the management of a recognized unit which has a continuing function.

Clearly, the relevant "units" in this case are the bus operators assigned to either the day or night shift. Further, it cannot be doubted that these operators are a recognized unit within the City of Macon's transit system, since they occupy a permanent and continuous position within the system, rather than providing a temporary function. Thus, the question becomes whether the plaintiffs, as transit supervisors, had as their primary duty the management of the bus operators.

Section 541.103 provides that a good rule of thumb to apply in the ordinary case is to determine whether management functions occupied the major portion of the employee's work activities. In other words, fifty percent or more of their work time. *Id.*

29 C.F.R. § 541.102(b) (1986) provides that the following relevant activities are considered to be managerial duties:

(1) The training of employees;

(2) The planning and directing of the work of employees;

(3) Maintaining records for use in supervision and control;

(4) Appraising worker productivity and efficiency for the purpose of recommending promotions or other changes in worker status; and

(5) The handling of complaints.

The court's findings of fact indicate that the plaintiffs were predominately involved in activities just such as these. Indeed, these activities constituted the basic day-to-day duties of the plaintiffs while transit supervisors. The court finds that the plain-tiffs all performed exempt managerial functions as their primary duty.

The final requirement is that the plaintiffs customarily and regularly direct the work of two or more employees. This is met since it is a fact that many more bus operators than this were assigned to the shifts that plaintiffs were responsible for.

Accordingly, all plaintiffs meet the "short test" for executive exemption pursuant to section 213(a)(1) for the periods of their employment that they received in excess of $250.00 per week in compensation.

■ As pointed out earlier, plaintiffs Bone and Griffin do not meet the minimum compensation requirement to invoke the "short test" for the earlier periods of their employment as transit supervisors. These employment periods must be examined under the "long test" of 29 C.F.R. § 541.3 to determine if the executive exemption is still applicable.

The requirements of the "long test" are:

(1) The employee must be compensated "on a salary basis" of not less than $155.00 per week;

(2) The employee's primary duty consists of the management of a customarily recognized department or subdivision;

(3) The employee customarily and regularly directs the work of two or more other employees;

(4) The employee has the authority to hire or fire employees, *or* his suggestions and recommendations concerning hiring or firing and as to advancement and promotion or any other change of status for other employees is given "particular weight";

(5) The employee customarily and regularly exercises "discretionary powers"; and,

(6) The employee must not devote more than twenty percent of his hours in a workweek to activities which are not related to the above.

*See* § 541.1.

The compensation requirement is met based upon the court's findings of fact. The second and third requirements have

already been discussed above. The court has found as a matter of fact that the plaintiffs' reports and recommendations concerning hiring, firing, and wage increases were plainly given great deference by the head supervisor and executive director. The totality of the deposition testimony indicates that the plaintiffs regularly and customarily exercised many discretionary powers on a day-to-day basis. Finally, this court has found as a matter of fact that plaintiffs did not devote as much as twenty percent of their work hours in a workweek to other than the exempt activities listed above.

Accordingly, the plaintiffs were all exempt executive employees pursuant to section 213(a)(1) for entirety of their respective employment periods as transit supervisors.

In accordance with the above findings of fact and conclusions of law, the court will enter judgment in favor of the defendant.