11-2616-cv
Ramos v. Baldor Specialty Foods, Inc.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

————————

August Term, 2011

(Argued: June 22, 2012     Decided: July 12, 2012)

Docket No. 11-2616-cv

————————

LUIS RAMOS, HERBER MARTINEZ, LEOBARDO MORENO, WILNER DUBON, SERGIO
CALDERON, JOSE BARRANCO, OSWALDO ERAZO, MARIANO CASTRO,
on behalf of themselves and others similarly situated,

*Plaintiffs-Appellants*,

— v. —

BALDOR SPECIALTY FOODS, INC., KEVIN MURPHY,

*Defendants-Appellees.*[*]

————————

B e f o r e:

POOLER, RAGGI, and LYNCH, *Circuit Judges*.

————————

Plaintiffs, a group of "captains" in defendants' wholesale food warehouse, seek

unpaid overtime wages, along with liquidated damages and attorneys' fees and costs,

under the Fair Labor Standards Act ("FLSA") and an analogous section of New York

———————

[*] The Clerk of Court is respectfully directed to amend the official caption as shown
above.

Labor Law ("NYLL"). They appeal a decision of the United States District Court for the Southern District of New York (Richard M. Berman, *Judge*) granting summary judgment for defendants on all claims on the ground that plaintiffs are "executives" exempt from the overtime pay provisions of the FLSA and NYLL. We affirm the district court's decision because the summary judgment record allows for no conclusion other than that each team of employees supervised by plaintiffs is a customarily recognized subdivision of defendants' company with a permanent status and function. Plaintiffs therefore qualify as "executives" as that term is defined by Department of Labor regulations, and are exempt from the overtime-pay protections of the FLSA and NYLL.

AFFIRMED.

---

C.K. LEE (Robert L. Kraselnik, *on the brief*), Kraselnik & Lee, PLLC, New York, New York, *for Plaintiffs-Appellants*.

MARC B. ZIMMERMAN (Jon Schuyler Brooks, Chryssa V. Valletta, *on the brief*), Phillips Nizer LLP, New York, New York, *for Defendants-Appellees*.

---

GERARD E. LYNCH, *Circuit Judge*:

Plaintiffs-appellants Luis Ramos, Herber Martinez, Leobardo Moreno, Wilner Dubon, Sergio Calderon, Jose Barranco, Oswaldo Erazo, and Mariano Castro ("plaintiffs"), proceeding individually and on behalf of other "similarly situated" employees working the night shift in a warehouse operated by defendants-appellees

2

Baldor Special Foods, Inc. ("Baldor"), filed suit in the United States District Court for the Southern District of New York (Richard M. Berman, *Judge*), seeking unpaid overtime wages, liquidated damages, and attorneys' fees and costs under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 207(a)(1), 216(b), and analogous sections of New York Labor Law ("NYLL"), N.Y. Labor L. §§ 2, 651, 663(1); see also N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.2 (2003).[1] The district court granted summary judgment for defendants, concluding that as "captains" employed in Baldor's warehouse, they fell within the FLSA's "executive exemption," which provides that the FLSA's overtime compensation protections "shall not apply" to "any employee employed in a bona fide executive, administrative, or professional capacity," as those terms are defined by Department of Labor regulations. 29 U.S.C. § 213(a)(1).

Plaintiffs do not dispute that they satisfy all but one of the criteria for exempt executives. The only disputed criterion, and the only issue on appeal, is whether the teams of employees that plaintiffs concededly supervise constitute "customarily recognized department[s] or subdivision[s]" of Baldor, 29 C.F.R. § 541.100(a)(3), defined by Department of Labor regulations as units with "a permanent status and a continuing function," id. § 541.103(a). We agree with the district court that the summary judgment record allows for no conclusion other than that the teams of warehouse employees

_____

[1] Like the FLSA, the NYLL "mandates overtime pay and applies the same exemptions as the FLSA." Reiseck v. Universal Commc'ns of Miami, Inc., 591 F.3d 101, 105 (2d Cir. 2010). We therefore discuss only the FLSA, and do not engage in a separate analysis of plaintiffs' NYLL claims, which fail for the same reasons as their FLSA claims.

3

managed by plaintiffs constitute units with a permanent status or function. Plaintiffs thus fall within the FLSA's executive exemption and are not entitled to FLSA overtime pay. Accordingly, we affirm the district court's grant of summary judgment for defendants.

**BACKGROUND**

**I.   Facts**

The pertinent facts of this case are not in dispute.[2]

Defendant Baldor is a wholesale food distributor in the Hunts Point area of the Bronx, New York. Defendant Kevin Murphy is the company's chief executive officer. Baldor's employees are divided into day and night shifts. The night shift "has a number of different departments, such as the warehouse department, transportation department, receiving department, maintenance department, night sales and International Produce Exchange team."

---

[2] These facts are drawn primarily from the deposition of plaintiff Jose Barranco, the only deposition taken in this case, and from the portions of defendants' Rule 56.1 statement that plaintiffs admitted or did not materially dispute. To the extent plaintiffs contest the accuracy of Barranco's deposition statements by citing statements made by plaintiffs in subsequent declarations, their argument is foreclosed by the stipulation entered by the parties in the district court, which provided that plaintiffs would not call as witnesses any of the other plaintiffs whom defendants did not depose "to in any way contradict anything that [Barranco] said" in his deposition, and that "the people who by agreement don't get deposed are not going to contradict something important said by one of the deposed plaintiffs." Like the district court, we decline to consider those portions of plaintiffs' declarations that conflict with Barranco's prior deposition testimony. See Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) ("[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts [his] own prior deposition testimony.").

Plaintiffs are current or former "captains" employed on the night shift in the Warehouse Department. Baldor employs twenty captains on the warehouse night shift, each of whom performs the same job duties as other captains. These duties include overseeing the work of a "team" of three to six "pickers," the employees who retrieve food products from the warehouse shelves and load them onto trucks to be delivered to Baldor's customers. Each captain is "in charge of" his team. He is responsible for making sure that his pickers arrive at work on time for each shift, retrieve the correct products from the warehouse shelves, and load the products onto the correct trucks. He is also responsible for improving his team's performance and efficiency over time. Each captain has the power to assign slow pickers "easier work" so that they do not fall behind or hurt the team's performance, and the captain can "give certain orders to certain pickers if [he] trust[s]" a particular picker "to get the right product." It is the captain's job to ensure pickers "have done their job right." Supervising his team is the "main part" of a captain's job. The company has continuously operated its Warehouse Department in its current structure, with captains in charge of teams of pickers, since at least 1999.

Although each team performs the same general tasks as other teams, each team has a distinct "assigned work area" in the warehouse where the captain and his team of pickers "report each shift." However, captains "are not given offices or even chairs." Every night, each captain arrives at work approximately thirty minutes before his team to prepare the team's work area for the shift and, inter alia, to "sign out" and "inspect" the equipment that his team will use. At the end of every shift, each captain completes a

5

"Pickers Production Report" for each picker on his team. The results of these reports determine whether the night warehouse manager will award productivity bonuses to individual pickers.

Captains report to the night warehouse manager. He regularly meets with each captain to discuss each team's performance. There are "too many" pickers for the manager to watch each of them every night, and so he relies on captains "to let him know" whether pickers are performing well. Each picker reports to his captain, but sometimes has direct contact with the night warehouse manager as well, including when the manager gives each picker his periodic performance evaluation. A captain always attends the performance evaluations of his pickers.

On every night shift, a picker works exclusively with his assigned team and captain. If a picker is not performing adequately, a captain may ask the night warehouse manager to transfer that picker to a different team; the manager typically grants such requests. Captains can recommend pickers to the manager for pay raises and for promotion to captain, and the manager sometimes asks captains for such recommendations. In addition, captains can issue warnings to pickers if they are underperforming. It is undisputed that captains also have the authority to fire pickers, although plaintiffs insist that defendants never told them that they had this authority until after plaintiffs filed their complaint in this case.

Captains earn $700 per week. They spend no more than one hour of each shift on non-supervisory tasks, such as sweeping up their team's work area.

6

## II.    The District Court's Decision

The district court concluded that the undisputed facts in the summary judgment record "unequivocally establishe[d]" that plaintiffs satisfied all of the regulatory requirements for the executive exemption from the FLSA's overtime-pay protections, because (1) plaintiffs were paid at least $455 per week; (2) their "primary duty" was managing teams of pickers, each of which constituted a customarily recognized department or subdivision of Baldor; (3) each captain directed the work of at least two other employees; and (4) plaintiffs' "suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of" pickers were "given particular weight." Ramos v. Baldor Specialty Foods, Inc., No. 10 Civ. 6271, 2011 WL 2565330, at *5-7 (S.D.N.Y. June 16, 2011), quoting 29 C.F.R. § 541.100(a)(2).

Plaintiffs appealed.

## DISCUSSION

## I.    Standard of Review

We review de novo a district court's award of summary judgment, "construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." Kuebel v. Black & Decker Inc., 643 F.3d 352, 358 (2d Cir. 2011). We will affirm the grant of summary judgment only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable

7

jury could return a verdict for the nonmoving party." Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist., 673 F.3d 84, 94 (2d Cir. 2012) (internal quotation marks omitted).

"The exemption question" under the FLSA "is a mixed question of law and fact." Myers v. Hertz Corp., 624 F.3d 537, 548 (2d Cir. 2010). "The question of how the [employees] spent their working time . . . is a question of fact. The question whether their particular activities excluded them from the overtime benefits of the FLSA is a question of law . . . ." Icicle Seafoods, Inc. v. Worthington, 475 U.S. 709, 714 (1986). We review that question of law de novo. See Martin v. Malcolm Pirnie, Inc., 949 F.2d 611, 614 (2d Cir. 1991). We likewise review de novo a district court's "interpretations of administrative regulations." Reiseck v. Universal Commc'ns of Miami, Inc., 591 F.3d 101, 104 (2d Cir. 2010).

"[B]ecause the FLSA is a remedial act, its exemptions, such as the 'bona fide executive' exemption claimed in this case, are to be narrowly construed." Martin, 949 F.2d at 614. "To extend an exemption to other than those plainly and unmistakably within its terms and spirit is to abuse the interpretative process and to frustrate the announced will of the people." A.H. Phillips, Inc., v. Walling, 324 U.S. 490, 493 (1945). Accordingly, "an employer bears the burden of proving that its employees fall within an exempted category of the Act." Martin, 949 F.2d at 614; see also Corning Glass Works v. Brennan, 417 U.S. 188, 196-97 (1974).

8

## II.       The FLSA Executive Exemption

Section 7(a)(1) of the FLSA provides that, subject to certain exceptions, an employee who works more than forty hours per week must receive compensation for "employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  One exception is that the overtime-pay rule "shall not apply with respect to . . . any employee employed in a bona fide executive, administrative, or professional capacity."  29 U.S.C. § 213(a)(1).  The FLSA does not define "bona fide executive, administrative, or professional" employment, and instead directs the Secretary of Labor to "define[] and delimit[]" those terms "from time to time by regulations."  Id.

Issued pursuant to statutory authority, the Department of Labor's 2004 regulations defining the terms of the FLSA executive exemption "have the force of law, and are to be given controlling weight unless they are found to be arbitrary, capricious, or manifestly contrary to the statute."  Freeman v. Nat'l Broadcasting Co., 80 F.3d 78, 82 (2d Cir. 1996) (citations omitted); see also Long Island Care at Home, Ltd. v. Coke, 551 U.S. 158, 165 (2007) (noting that the FLSA "explicitly leaves gaps" that the Department of Labor has "the power to fill . . . through rules and regulations"); Fanelli v. U.S. Gypsum Co., 141 F.2d 216, 218 (2d Cir. 1944); Dep't of Labor, Wage & Hour Div., Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22,122, 22,124 (Apr. 23, 2004) ("Because the FLSA delegates to the Secretary of Labor the power to define and delimit the specific terms of

9

these exemptions through notice-and-comment rulemaking, the regulations so issued have the binding effect of law.").

"Unlike regulations," however, the Department of Labor's interpretations of its own regulations "are not binding and do not have the force of law," Freeman, 80 F.3d at 83, although "we will generally defer to an agency's interpretation of its own regulations . . . so long as the interpretation is not plainly erroneous or inconsistent with the law," Cardiano v. Metacon Gun Club, Inc., 575 F.3d 199, 207 (2d Cir. 2009); see also Long Island Care at Home, 551 U.S. at 171 ("[A]n agency's interpretation of its own regulations is controlling unless plainly erroneous or inconsistent with the regulations being interpreted." (internal quotation marks omitted)).

We consider and defer to the Department of Labor's interpretation of a regulation – including the regulatory preamble included in the Federal Register, see 69 Fed. Reg. 22,122 – only if the regulation is ambiguous. See Christensen v. Harris County, 529 U.S. 576, 588 (2000); Mullins v. City of New York, 653 F.3d 104, 113 (2d Cir. 2011). If the text of a regulation presents no ambiguity, then "we are simply tasked with the application of an unambiguous regulation to the particular facts" of a case. Schaefer-LaRose v. Eli Lilly & Co., 679 F.3d 560, 572 n.20 (7th Cir. 2012).[3]

---

[3] Plaintiffs do not argue that the regulations are ambiguous or urge us to consider regulatory interpretations. We conclude that the regulations unambiguously exempt plaintiffs from the overtime pay requirements of the FLSA. Accordingly, we need not defer to the Secretary's interpretations of those regulations. Nevertheless, as discussed below, those interpretations only bolster our conclusion.

The Department's regulations defining the terms of the FLSA's executive exemption provide that "[t]he term 'employee employed in a bona fide executive capacity' . . . shall mean any employee":

> (1) Compensated on a salary basis at a rate of not less than $455 per week . . . , exclusive of board, lodging or other facilities;
> (2) Whose primary duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision thereof;
> (3) Who customarily and regularly directs the work of two or more other employees; and
> (4) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight.

29 C.F.R. § 541.100(a). The parties agree that the first, third, and fourth requirements of this definition are satisfied: each captain is paid more than $455 per week, each captain customarily and regularly directs the work of two or more pickers, and captains' suggestions and recommendations concerning the hiring, firing, and promotion of pickers "are given particular weight." Id.

With respect to the second requirement, plaintiffs do not dispute that their "primary duty" is supervising their respective teams. 29 C.F.R. § 541.100(a)(2). They dispute, however, that each captain manages "a customarily recognized department or subdivision" of Baldor. Id. They insist that the teams of pickers do not constitute customarily recognized departments or subdivisions as defined in the regulations, because each team performs the same tasks as other teams at the same time and in the same warehouse, and that the executive exemption therefore does not apply to captains.

11

The regulations define "a customarily recognized department or subdivision" as "a unit" that "must have a permanent status and a continuing function," as opposed to "a mere collection of employees assigned from time to time to a specific job or series of jobs." 29 C.F.R. § 541.103(a). The regulations provide the illustrative example of "a large employer's human resources department," which "might have subdivisions for labor relations, pensions and other benefits, equal employment opportunity, and personnel management, each of which has a permanent status and function." Id. However, the regulations go on to explain that the concept of a customarily recognized department or subdivision is flexible: each unit "need not be physically within the employer's establishment and may move from place to place," and merely because an "employee works in more than one location does not invalidate the exemption if other factors show that the employee is actually in charge of a recognized unit with a continuing function in the organization." Id. § 541.103(c). In addition, "[c]ontinuity of the same subordinate personnel is not essential to the existence of recognized unit with a continuing function":

> An otherwise exempt employee will not lose the exemption
> merely because the employee draws and supervises workers
> from a pool or supervises a team of workers drawn from other
> recognized units, if other factors are present that indicate that
> the employee is in charge of a recognized unit with a
> continuing function.

Id. § 541.103(d).

The most recent version of the regulations appeared in 2004 in the Federal Register, along with a preamble, in which the Department of Labor noted, with regard to § 541.103:

12

Several commenters request that the Department expand or clarify the phrase "department or subdivision." The Morgan Lewis & Bockius law firm asks the Department to expand the phrase "department or subdivision" to include "grouping." The Public Sector FLSA Coalition suggests that the phrase be broadened to account for a functional unit which would provide for a more flexible or fluid organizational philosophy. The National Council of Chain Restaurants asks for confirmation of the Department's historic enforcement position that "front of the house" and "back of the house" are recognized subdivisions. The U.S. Chamber of Commerce states that the phrase "department or subdivision" is outdated and the applicable units should provide for project teams. Finally, the League of Minnesota Cities questions whether a subdivision would include supervision of a day shift.

The Department has decided not to expand the term "department or subdivision" because the phrase has not caused confusion or excessive litigation. Expanding the definition would unduly complicate this requirement and likely lead to unnecessary litigation. Indeed, the courts already have provided clarification of the phrase on a number of occasions. For example, several courts have stated that a shift can constitute a department or subdivision, which responds to the question raised by the League of Minnesota Cities. The Department notes that the issue identified by the National Retail Federation as to whether "front of the house" in a store constitutes a department or subdivision was answered by at least one court in the affirmative. *Finally, the Department observes that "groupings" or "teams" may constitute a department or subdivision under the existing definition, but a case-by-case analysis is required.* The Department believes these cases correctly define and delimit the term "department or subdivision."

Defining and Delimiting the Exemptions, 69 Fed. Reg. at 22,134 (citations omitted)

(emphasis added).

Although this regulatory preamble does not bind us to any particular interpretation

of the FLSA or the regulations, it is "persuasive because it rests on a 'body of experience

13

and informed judgment to which courts and litigants may properly resort for guidance.'"

See In re Beacon Assocs. Litig., 745 F. Supp. 2d 386, 424 (S.D.N.Y. 2010), quoting

Alaska Dep't of Envtl. Conserv. v. EPA, 540 U.S. 461, 487 (2004).  As explained below,

the teams of pickers constitute subdivisions of defendants' Night Warehouse Department

for purposes of the FLSA executive exemption.  Captains are therefore "executives" for

purposes of the FLSA and exempt from the statute's overtime-pay protections.

III.    Analysis

In our previous FLSA cases, we have not had occasion to interpret the meaning of

"a customarily recognized department or subdivision thereof," 29 C.F.R. § 541.100(a)(2),

or of a unit with "a permanent status and a continuing function," id. § 541.103(a).  This

case therefore presents an issue of first impression for our Court: whether a unit can have

"a permanent status and a continuing function" when it is functionally identical to other

units, when it works the same shift as other units, and when it operates in the same

physical space as other units.  Plaintiffs insist that because the teams of pickers cannot be

distinguished from one another "by a specific standard such as function, geographical

area or operational responsibility," Pls.' Br. 9, the teams cannot as a matter of law be

considered customarily recognized subdivisions of Baldor under 29 C.F.R.

§ 541.100(a)(2).  In plaintiffs' view, a subdivision must, as a matter of law, "have *at least*

some sort of functional independence from other subdivisions in the same department

(i.e., independence of role, location or time)," and does not fall within the exemption if it

"perform[s] the same role in the same location at the same time" as other subdivisions.

Pls.' Reply Br. 5.

14

Plaintiffs' argument relies largely on caselaw, rather than on the text of the regulations. Their only textual argument derives from the list of illustrative examples of "subdivisions" in 29 C.F.R. § 541.103(a). A list of illustrative examples in a statute or regulation may, on occasion, properly be read as imposing a limit on general terms in the statute or regulation. See, e.g., Begay v. United States, 553 U.S. 137, 143-44 (2008); N.Y. Currency Research Corp. v. Commodity Futures Trading Comm'n, 180 F.3d 83, 89-90 (2d Cir. 1999). But we are not persuaded that this particular list of examples – the "labor relations, pensions and other benefits, equal employment opportunity, and personnel management" subdivisions of a hypothetical "large employer's human resources department," 29 C.F.R. § 541.103(a) – indicates that the Department of Labor intended to require that subdivisions be limited to units that perform distinct tasks or are otherwise distinguishable by some "specific standard," Pls.' Br. 9, a requirement that is not otherwise stated in the regulatory text.

Indeed, while a few of our sister circuits and several district courts have interpreted the meaning of a "customarily recognized department or subdivision," no court that we know of has adopted the limiting construction that plaintiffs urge. Nor has the Department of Labor adopted that construction in its interpretations of its regulations. See, e.g., Defining and Delimiting the Exemptions, 69 Fed. Reg. at 22,134. And none of the cases cited by the Department in its preamble to the regulations, see id., stands for the proposition that plaintiffs now urge us to endorse: that, as a matter of law, multiple units unit cannot have a permanent status and continuing function if they are functionally,

15

temporally, or geographically identical to each other. This proposition finds no support in the legislative history of the FLSA, in the regulations, or in the Department's interpretations of those regulations.

Furthermore, the decisions of other courts do not suggest that the FLSA's executive exemption imposes any such uniqueness requirement for customarily recognized departments or subdivisions. Indeed, plaintiffs have not cited a single case in which a court found that the executive exemption did not apply because a unit was found not to be a customarily recognized department or subdivision. The Fourth Circuit, for example, has noted that "[a] station or a shift" of firefighters "constitutes a recognized department or subdivision of the Fire Department" for purposes of the exemption. West v. Anne Arundel County, 137 F.3d 752, 763 (4th Cir. 1998). The Southern District of West Virginia found a fire station to be a customarily recognized department or subdivision of a city or of its fire department, with a permanent status and continuing function. Masters v. City of Huntington, 800 F. Supp. 363, 366 (S.D. W. Va. 1992). The court noted that fire stations

> are, of course, physically separated and have specific areas within their purview. Though transfers are available, distinct groups of firefighters are assigned to each station and each station, as has been seen, is under the command of a station captain. In light of such circumstances, it cannot reasonably be argued that the six fire stations located in the City of Huntington lack the status of a "customarily recognized department or subdivision" . . . .

Id. However, the court did not articulate a minimum set of requirements – for example,

16

that physical separation is *necessary* for the exemption to apply. The court merely treated physical separation as one factor indicating that each station was a customarily recognized department or subdivision.[4]

The Northern District of Illinois has recognized that the "front end" staff in a grocery store (cashiers and baggers) constituted a department or subdivision, Debartolo v. Butera Finer Foods, No. 95 C 2705, 1995 WL 516990, at *4 (N.D. Ill. Aug. 29, 1995), and that a customarily recognized department or subdivision can "include small groups of employees working on a related project within a larger department, such as a group leader of four draftsmen in the gauge section of a much larger department," Gorman v. Cont'l Can Co., No. 76 C 908, 1985 WL 5208, at *6 (N.D. Ill. Dec. 31, 1985); see also Baudin v. Courtesy Litho Arts, Inc., 24 F. Supp. 2d 887, 892 (N.D. Ill. 1998). Similarly, several district courts have acknowledged that work shifts can constitute customarily recognized departments or subdivisions. The Northern District of Ohio, for example, held that one of two 12-hour night shifts in a factory's forge department "constituted a separate subdivision" of the department with a permanent status and continuing function because,

---

[4] The Fourth Circuit's unpublished decision in Kessler v. Howard County, 972 F.2d 340 (Table), 1992 WL 204344 (4th Cir. 1992), relied on by plaintiffs, is not to the contrary. In that case, the court stated that a unit must have at least some "functional independence" to qualify as a customarily recognized department or subdivision. Id. at *4. Read in context, it is clear that the Fourth Circuit used the quoted phrase not to describe units' performing distinct types of work, but rather to reference the units' having at least some degree of autonomy in their operation. See id. (requiring further inquiry by the district court into whether "sections operate independently of one another and the importance of the sections' independent functions"). There appears to be no dispute that the teams at issue here have such autonomy.

17

among other reasons, the shifts "were ongoing units" and "employees generally stayed on one shift and worked under one supervisor." Burson v. Viking Forge Corp., 661 F. Supp. 2d 794, 800 (N.D. Ohio 2009).[5]

While operating in different locations, working different shifts, or performing distinct functions from other teams are certainly factors that *can* support the conclusion that a team of employees constitutes a customarily recognized department or subdivision, plaintiffs have not cited and we have not found any case – in our circuit or elsewhere – that goes so far as to *require* one of those specific types of distinguishability as a matter of law. Nor do the Department's interpretations or the scant legislative history of the FLSA's executive exemption support such a reading.[6]

---

[5] See also Maestas v. Day & Zimmerman, LLC, Civ. No. 09-019, 2010 WL 5625914, at *9 (D.N.M. Nov. 30, 2010) (eight-hour shifts of security guards constituted customarily recognized subdivisions), aff'd in part and rev'd in part on other grounds, 664 F.3d 822 (10th Cir. 2012); Beauchamp v. Flex-N-Gate LLC, 357 F. Supp. 2d 1010, 1012-18 (E.D. Mich. 2005) (shift supervisor in the production department of an auto parts manufacturer was an exempt executive); Joiner v. City of Macon, 647 F. Supp. 718, 721-22 (M.D. Ga. 1986) (shifts of bus drivers were customarily recognized subdivisions "since they occupy a permanent and continuous position within the system, rather than providing a temporary function").

[6] The Department of Labor, reviewing the FLSA's legislative history, describes the exemptions as being "premised on the belief that the workers exempted typically earned salaries well above the minimum wage, and they were presumed to enjoy other compensatory privileges such as above average fringe benefits and better opportunities for advancement, setting them apart from the nonexempt workers entitled to overtime pay." Defining and Delimiting the Exemptions, 69 Fed. Reg. at 22,123-24. In addition, "the type of work they performed was difficult to standardize to any time frame and could not be easily spread to other workers after 40 hours in a week, making compliance with the overtime provisions difficult and generally precluding the potential job expansion intended by the FLSA's time-and-a-half overtime premium." Id. at 22,124; see also H.R. Rep. No. 95-521 (1977)

Furthermore, we see no reason that Congress would have intended to impose the distinction that plaintiffs ask us to impose here, between supervision of unique and non-unique teams. The purpose of the FLSA's "bona fide executive" exemption, 29 U.S.C. § 213(a)(1), is to distinguish managerial employees from non-managerial employees. The job of supervising a team of employees becomes no less managerial merely because the team operates alongside *other* teams performing the same work in the same building.[7] A company's decision to organize its workforce in that way does not render each team a "mere collection of employees assigned from time to time to a specific job." 29 C.F.R. § 541.103.

The Department of Labor has recognized that "'groupings' or 'teams' may constitute a department or subdivision under the existing definition, but a case-by-case analysis is required." Defining and Delimiting the Exemptions, 69 Fed. Reg. at 22,134. Here, that analysis leaves no doubt that each team of pickers is a customarily recognized subdivision of Baldor's Night Warehouse Department. Each team has a defined membership; each captain leads the same team on each shift; pickers do not change teams without being transferred by the night warehouse manager, often at the request of a

---

(reviewing history of FLSA minimum-wage provisions); H.R. Rep. No. 93-913 (1974) (same).

[7] Under plaintiffs' interpretation, for example, a lead accountant supervising two bookkeepers would be an exempt executive if the unit were the only one working on employee benefits, while others with the same title would not be executives, even if they supervised larger teams, if those teams all did similar work dealing with accounts receivable. Such a distinction would make no sense in terms of the purpose of the exemption.

19

captain; at the start of every shift, each team meets at its "assigned work area" in the warehouse; and each captain is "in charge of" supervising his team, evaluating their work, and making promotion recommendations to the night warehouse manager.

Particularly given that all of the other requirements of the executive exemption are indisputably satisfied here, these factors clearly establish that each team is a customarily recognized subdivision with a continuing status and function. Whether all of the warehouse teams "perform the same responsibility and thus are interchangeable," as plaintiffs assert, Pls.' Br. 11, is ultimately immaterial. Interchangeability of a team's function does not alter the supervisory nature of the *captain's* job. Defendants have met their burden of establishing that the executive exemption applies to the captains. It is not for us to decide whether, as a policy matter, plaintiffs ought to be entitled to overtime pay. "Members of this Court are vested with the authority to interpret the law; we possess neither the expertise nor the prerogative to make policy judgments." Nat'l Fed'n of Indep. Bus. v. Sibelius, — S.Ct. —, 2012 WL 2427810, at *9 (2012).

Admittedly, a warehouse worker who earns $700 per week ensuring that vegetables and other foodstuffs are loaded onto the correct delivery trucks and who lacks an office, a cubicle, or even a chair to call his own does not fit the popular image of a "bona fide executive." 29 U.S.C. § 213(a)(1). But whatever incongruity there may be has nothing to do with the criterion plaintiffs would have us read into the regulation. Plaintiffs do not dispute the applicability of any of the criteria for executive status that concern their own managerial role. Rather, they argue that they are not executives

20

because of a characteristic of the units that they supervise, based on a rule that would assuredly deny exemption to any number of highly paid managerial employees who head distinct teams of subordinates, simply because those teams perform parallel, rather than functionally distinct, tasks. In any event, Congress left the linedrawing task to the Department of Labor, which has drawn lines that exempt plaintiffs from the FLSA's overtime protections. Congress or the Department would be free, of course, to redraw those lines. But under the current regulations, which are not "arbitrary, capricious, or manifestly contrary to the [FLSA]," Freeman, 80 F.3d at 82, plaintiffs are not entitled to overtime pay.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.