22-874-cv
Creaven v. Erickson

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 29th day of June, two thousand twenty-three.

PRESENT:
> ROSEMARY S. POOLER,
> BARRINGTON D. PARKER,
> ALISON J. NATHAN,
> *Circuit Judges.*

---

Patrick Creaven,

> *Plaintiff-Appellant*,

v.                                                                   22-874-cv

Stephen Erickson,

> *Defendant-Appellee*.

---

FOR PLAINTIFF-APPELLANT:          JOHNATHAN CARTELLI, Law Office of Johnathan Cartelli, P.C., Middle Village, NY

FOR DEFENDANT-APPELLEE:          JAMES F. MURPHY, Lewis Johs Avallone Aviles, LLP, Islandia, NY.

Appeal from a judgment of the United States District Court for the Eastern District of New York (Hurley, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED in part and VACATED in part**.

Plaintiff-Appellant Patrick Creaven appeals from the district court's denial of his motion for summary judgment and grant of Defendant-Appellee Stephen Erickson's motion for summary judgment on all of Plaintiff's contract claims. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal, which we refer to only as necessary to explain our decision to affirm in part and vacate in part.

## BACKGROUND

In 2007, Plaintiff and Defendant formed EnablePay Direct, LLC, a merchant acquiring company that manages merchant relationships to process credit and debit card transactions in the major credit card networks. Plaintiff invested approximately $410,000 in EnablePay and extended it a loan in the amount of approximately $200,000. Plaintiff also served as EnablePay's general counsel and executive vice president. In 2008, Plaintiff and Defendant entered into a Letter Agreement, which included a New York choice-of-law clause and provided, in relevant part:

> In consideration of the extraordinary financial and other support provided by Patrick M. Creaven to me [Erickson] and the Company [EnablePay], at any time upon and following the date the Company is dissolved or ceases operation for any reason, and for a period of ten (10) years thereafter, I understand and agree that:

2

(A) I and members of my family, or any entity in which I have an ownership or beneficial interest, will not (directly or indirectly) become investors in, or a registered or beneficial owners of any class of capital stock, membership or other interests (including warrants, options or any similar interests) in, any Similar Business (such interests in a Similar Business, the "Interests") unless and until Patrick M. Creaven, his heirs or successors, or an entity in which he has an ownership or beneficial interest (each individually and collectively, the "Creaven Parties"), is provided the opportunity to receive: (i) in respect of amounts invested by Patrick M. Creaven in the Company, the same Interests (and class thereof) as my Interests in such Similar Business; and (ii) in respect of amounts loaned by Patrick M. Creaven to the Company, (x) the same Interests (and class thereof) as my Interests in such Similar Business and/or (y) the same Interests purchased or received by other investors in such Similar Business (in the sole discretion of Patrick M. Creaven); *provided*, *however*, that the foregoing shall not prohibit me from becoming the registered or beneficial owner of up to five percent (5%) of any class of the capital stock, membership or other interests (including warrants, options or any similar interests) of a Similar Business if I am then employed as an executive of such Similar Business and such interests are awarded as part of a compensation plan available to other executives and management of such Similar Business and in amounts consistent with other participants in such plan;

(B) the entire amount invested and/or loaned by Patrick M. Creaven to the Company on and prior to the date of this letter agreement . . . shall be credited toward the receipt, purchase and/or grant of such Interests to any of the Creaven Parties . . . , and such Interests of the Creaven Parties in any such Similar Business shall be allocated and valued as follows (as applicable after operation of subparagraph (A) above): (i) in respect of amounts invested by Patrick M. Creaven in the Company, at *no less than* the valuation of my Interests in such Similar Business, (ii) in respect of the principal amount loaned by Patrick M. Creaven to the Company, at the *greater of* the valuation of my Interests and the Interests of such other investors in such Similar Business (as determined in the sole discretion of any of the Creaven Parties) and (iii) in respect of interest on the amount loaned by Patrick M. Creaven, at the *lesser of* the valuation of my Interests and the Interests of such other investors in such Similar Business;

(C) I will represent the Creaven Parties (or any of them) as a founder and as an investor in any such Similar Business to any other interested parties, investors or potential investors in such Similar Business, and shall require such other interested parties, investors and potential investors to agree to allocate and value the Interests of the Creaven Parties in such Similar Business in accordance with the terms of this letter agreement;

. . . .

3

(E) I will use my best efforts to obtain a position for Patrick M. Creaven in the Similar Business comparable to the position held by him with the Company, with similar responsibilities, and at a level of compensation in relation to mine that is similar to that which existed at the Company (it being understood that this subparagraph (E) shall operate only in the context of a Similar Business in which I have or seek to have an Interest).

App'x at 25–26.

In 2011, Midland States Bank (MSB), an Illinois-based community bank, approached EnablePay about purchasing its assets. By April 2012, MSB had acquired most of EnablePay's assets pursuant to an Asset Purchase Agreement (APA) and had hired both Plaintiff and Defendant to roles in its merchant services division, with Plaintiff reporting to Defendant. Plaintiff signed an Executive Employment Agreement with MSB that permitted him to be terminated without cause on thirty days' notice, as well as an Award Agreement permitting him to participate in MSB's Long Term Incentive Plan, pursuant to which Plaintiff would receive options in 20,000 shares of MSB stock, which would vest and become exercisable in increments over a four-year period. Defendant signed very similar agreements with MSB.

MSB's acquisition of EnablePay did not end happily, however. In January 2014, Plaintiff was terminated by MSB, and shortly thereafter MSB closed the merchant services office in New York that it had acquired from EnablePay. At this point, Plaintiff had not yet exercised any MSB stock options. By September 2016, MSB and EnablePay entered into a Termination Agreement that fully unwound the acquisition, pursuant to provisions of the APA contemplating such a procedure in the event certain financial performance metrics were not met. Defendant continued to remain employed at MSB following the unwinding of the EnablePay acquisition, accepting a role in MSB's M&A division.

4

Plaintiff filed suit, alleging that Defendant had breached various provisions of the Letter Agreement and the implied covenant of good faith and fair dealing by causing Plaintiff's termination. Plaintiff claims he was thereby deprived of the opportunity to receive "Interests" in a "Similar Business"—*i.e.*, shares of MSB—owned by Defendant. Following discovery, the parties cross-moved for summary judgment on all of Plaintiff's claims.

In March 2022, the district court denied Plaintiff's motion and granted Defendant's motion in full. The court noted that there were two disputes of material fact that alone precluded granting Plaintiff's motion: (1) when, if ever, MSB was a "Similar Business" as defined in the Letter Agreement; and (2) when, if ever, EnablePay had dissolved or ceased operations. Nevertheless, the court assumed for purposes of its analysis that MSB was a Similar Business and that EnablePay had dissolved or ceased operations at some point. Even with these assumptions, the court held that summary judgment for Defendant was warranted. Under the plain terms of the Letter Agreement, Defendant was relieved of his obligations under § A if the conditions of the proviso in § A (the 5% Provision) were met. (Defendant would also accordingly be relieved of his obligations under § B, because that section only came into effect when § A applied.) The court explained that the 5% Provision's conditions were satisfied because there was no genuine dispute that "Erickson (as well as Creaven) received the stock option 'while employed' by MSB," that "[t]he options awarded to Erickson represented far less than 5% of the capital stock of MSB," and "that the options were received as part of MSB's Stock Option Plan." *Creaven v. Erickson*, No. 19-CV-330, 2022 WL 2643500 at *4, 10 (E.D.N.Y. Mar. 24, 2022). Because Plaintiff's first and second cases of action were predicated on breaches of §§ A and B, they therefore failed as a matter of law. The court then held that

5

Plaintiff's third cause of action for beach of § E failed as a matter of law because "Erickson fulfilled any obligation he may have had under that provision" when "Creaven was hired as Director of Merchant Services by MSB."  *Id.* at *10.[1]  Lastly, the court reasoned that Plaintiff's breach of implied covenant claim failed as duplicative.  Plaintiff timely appealed.

## DISCUSSION

"We review de novo a district court's ruling on cross-motions for summary judgment, in each case construing the evidence in the light most favorable to the non-moving party."  *Fund for Animals v. Kempthorne*, 538 F.3d 124, 131 (2d Cir. 2008) (citation omitted).  We will affirm a grant of summary judgment "only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Ramos v. Baldor Specialty Foods, Inc.*, 687 F.3d 554, 558 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(a)).  "In determining whether there are genuine issues of material fact, we are 'required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'"  *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003) (quoting *Stern v. Trs. of Columbia Univ. in the City of N.Y.*, 131 F.3d 305, 312 (2d Cir. 1997)).

To succeed on a breach of contract claim under New York law, a plaintiff must show (1) an agreement; (2) performance by the plaintiff; (3) breach; and (4) damages.  *See Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).  At issue in this appeal is whether Defendant breached various provisions of the Letter Agreement.

---

[1] Although Plaintiff erroneously referred to § E as § D throughout his complaint and briefing below, it is clear, as the district court noted, that this claim in fact referred to § E.

6

## I. Breach of Section C

On appeal, Plaintiff argues that the district court erred in failing to award him summary judgment because he pleaded and moved for summary judgment on a cause of action for breach of § C of the Letter Agreement. He claims that Defendant failed to address this cause of action in his motion papers, and that Defendant should therefore be deemed to have abandoned any defenses to that cause of action under *Jackson v. Federal Express*, 766 F.3d 189 (2d Cir. 2014). We reject this argument because a review of Plaintiff's pleadings and motion papers reveals that he neither alleged, nor adequately briefed, a supposed standalone cause of action for breach of § C. And even if he had, his argument misunderstands the law. As the case upon which Plaintiff relies explains, "Rule 56 does not allow district courts to automatically grant summary judgment on a claim simply because the summary judgment motion, or relevant part, is unopposed." *Id.* at 194. Rather, "[b]efore summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed," and "the court must determine whether the legal theory of the motion is sound." *Id.* Here, the district court explained that it denied Plaintiff's summary judgment motion because of at least two genuine disputes of material fact. And to the extent that Plaintiff now tries to characterize his second cause of action as alleging a breach of § C, the district court correctly explained that that claim failed as a matter of law because the 5% Provision relieved Defendant of the relevant obligations.

## II. First and Second Causes of Action

We affirm the district court's grant of summary judgment for Defendant on Plaintiff's first and second causes of action for substantially the reasons stated in its opinion. We agree that there

7

is no genuine dispute that the requirements of the 5% Provision were met, and that, as such, Defendant's obligations under §§ A and B did not come into effect. In other words, because Defendant received his interests in MSB pursuant to an executive compensation program in amounts consistent with other executives, and those interests constituted less than 5% of MSB's total value, Defendant was not required to provide Plaintiff the opportunity to receive those same interests in accordance with § A nor to credit Plaintiff upon receipt of those interests in accordance with § B.

### III.    Third Cause of Action

We cannot, however, affirm the district court's holding with respect to Plaintiff's third cause of action for breach of § E. In relevant part, that section requires Defendant—in the event that EnablePay is "dissolved or ceases operation for any reason, and for a period of ten (10) years thereafter"—to "use [his] best efforts to obtain a position for [Plaintiff] in the Similar Business comparable to the position held by [Plaintiff] with [EnablePay]." App'x at 25–26. The district court concluded that there were genuine disputes of fact over whether EnablePay had, in fact, dissolved or ceased operations at all, and if so, when that had occurred. But it assumed for the purposes of its analysis, without specifying *when*, that "the prerequisite cessation of operations occurred." *Creaven*, 2022 WL 2643500 at *9. The court then reasoned that Defendant satisfied his obligation under § E because "Creaven was hired as Director of Merchant Services by MSB" in 2012. *Id.* at *10.

The problem with the district court's analysis is that Defendant's obligation under this provision of the Letter Agreement comes into effect only *after* EnablePay is dissolved or ceases operations. *If* EnablePay ceased operations in 2012, when most of its assets were sold to MSB,

8

then the district court's conclusion—that no reasonable jury could find that Defendant breached § E—would likely follow. However, Plaintiff argues that EnablePay did not cease operations until early 2014, when its former New York office was closed by MSB shortly after he had been terminated. We share the district court's skepticism that this event would constitute the cessation of EnablePay's operations within the meaning of the Letter Agreement. But there is some evidence in the record suggesting that EnablePay had ceased operations by September 2015, at least. If EnablePay did not dissolve or cease operations until 2014 or 2015, after Plaintiff's termination from MSB, then the fact that Plaintiff had been previously hired by MSB in 2012 would not be sufficient to satisfy Defendant's obligations under § E. At that point, Defendant would have been under no § E obligation to use best efforts, because the condition precedent would not yet have occurred. Finally, the fact that Plaintiff signed an employment agreement with MSB permitting termination without cause is not relevant to his claims in this litigation, as he is not suing MSB nor raising claims based on the Employment Agreement.

To be clear, § E does not guarantee Plaintiff employment at MSB. Precisely for that reason, the mere fact that Plaintiff was terminated is not in and of itself proof of any violation of § E. But § E does require Defendant to undertake "best efforts" to obtain employment for Plaintiff at the "Similar Business"—here, MSB. Under § E's plain terms, if this obligation was triggered in 2014 or 2015, after Plaintiff's termination, then Defendant was obliged to use best efforts at that point to find *another* job for Plaintiff at MSB. To be sure, any such effort may well have been futile, given the factual context.[2] But Defendant need not have been successful in order

---

[2] Though not necessarily so; Defendant himself was offered, and accepted, a demotion to a director role in MSB's M&A division in 2016 after the acquisition of EnablePay was fully unwound.

to satisfy his § E obligations—he needed only to have made "best efforts" to find Plaintiff employment at MSB. Defendant, however, does not identify *any* evidence pertaining to what, if any, efforts he made to find Plaintiff employment at MSB after Plaintiff's termination. On this record, a reasonable jury could conclude that Defendant breached § E, if they were to conclude that EnablePay did not dissolve or cease operations until 2014 or 2015 and that MSB constituted a "Similar Business" within the meaning of the Letter Agreement.

For these reasons, we vacate the district court's grant of summary judgment for Defendant on Plaintiff's third cause of action and remand for further proceedings consistent with this summary order.

## IV. Fourth Cause of Action

We affirm the district court's grant of summary judgment for Defendant on Plaintiff's fourth cause of action, for breach of the implied covenant, for substantially the reasons stated by the district court. "New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) (citation omitted). Accordingly, if a plaintiff asserts claims both for breach of contract and breach of the implied covenant, the implied covenant claim can survive "only if it is based on allegations different from those underlying the breach of contract claim, and the relief sought is not intrinsically tied to the damages that flow from the breach of contract." *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022). Here, because the "claim for breach of the implied covenant of good faith and fair dealing . . . is based on the same facts as [the] claim[s] for breach of contract," and Plaintiff fails to identify a different basis for damages, the

10

implied covenant claim "should [be] dismissed as redundant." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 434 n.17 (2d Cir. 2011); *see also JN Contemp. Art*, 29 F.4th at 128.

***

We have considered Appellant's remaining arguments and find them to be without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court insofar as it denied Plaintiff's motion for summary judgment and granted Defendant's motion for summary judgment on Plaintiff's first, second, and fourth causes of action, but **VACATE** the judgment insofar as it granted Defendant's motion on Plaintiff's third cause of action and **REMAND** for further proceedings consistent with this summary order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court